EDWIN RUCKER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 22, 1906.*

RAPE—*force is an essential ingredient where female is of age of consent.* Force is an essential ingredient of the crime of rape where the female is above the legal age of consent, and proof of a somewhat reluctant consent, there being no effort made at resistance, is not sufficient to supply such ingredient.

WRIT OF ERROR to the Circuit Court of Moultrie county; the Hon. SOLON PHILBRICK, Judge, presiding.

JOHN E. JENNINGS, and W. K. WHITFIELD, for plaintiff in error.

W. H. STEAD, Attorney General, and A. W. LUX, State's Attorney, (J. R. FITZGERALD, of counsel,) for the People.

Per CURIAM: The grand jury of Moultrie county, at its March term, 1906, returned an indictment against plaintiff in error. It contained two counts. The first charged him with having committed rape upon one Mary Stoler. The second charged him with having assaulted her with intent to commit rape. The case was tried by a jury, which returned a verdict finding him guilty of rape, as charged in the first count, and fixing his punishment at one year in the penitentiary. A motion was made to set aside the verdict and to grant a new trial, which motion was overruled and judgment entered upon the verdict. The case is brought to this court to reverse the judgment of the trial court.

The only question which we will consider is whether the verdict is sustained by the evidence. In other words, whether the evidence shows that the act of sexual intercourse was so forcible and against the will of the prosecutrix as to consti-

tute rape, or whether she consented to it and permitted it to take place willingly, thus removing the element of force necessary to the crime.

The evidence shows that the prosecutrix was a single woman, past eighteen years of age, residing in Arthur, Illinois. On the 26th of March, 1906, she went to Sullivan, this State, on the afternoon Chicago and Eastern Illinois train for the purpose of paying some taxes for her mother, arriving there about three o'clock P. M. After paying the taxes she went to the Chicago and Eastern Illinois depot to wait for her train, which left Sullivan about eleven o'clock that night. She remained there for some time and then went to procure a lunch. She then went to the Wabash depot and from there back to the Chicago and Eastern Illinois depot, where she remained until about eight o'clock P. M. She then left the depot in company with Guy Bupp and William Petit. They strolled about the streets, and finally went upon the right of way of the Chicago and Eastern Illinois Railway Company, in the north part of the city. While upon the right of way she had sexual intercourse with Bupp and Petit, or she at least told plaintiff in error that she did, and his statement in this regard was not contradicted by her. The parties afterwards went down town and up an alley to the back door of the barber shop of Charles Petit, where William Petit broke the glass out of the door and the three entered the barber shop. She claimed upon the trial that she did not want to go into the shop, but Bupp and Petit made her do so. They arrived at the shop about ten o'clock. After they had been in the shop for some time Petit left and Miss Stoler and Bupp remained. Plaintiff in error and Petit met on the corner, and Petit informed him that there was a woman at the barber shop from Arthur, and they both went back to the shop. Upon arriving. there the plaintiff in error found Miss Stoler and Bupp in the bath room. He went into the bath room, where she was seated on the edge of the bath tub, with her hat and wraps

off. The plaintiff in error spoke to her, took a seat on the side of the tub, placed his right arm around her waist and sat in that position talking to her. He asked her to have sexual intercourse with him. He says she replied that she was tired and that he would have to wait. She claimed that after he asked her to have intercourse, and after her refusal, he threw or laid her down upon the floor and had intercourse with her; that he did not throw her down very hard; that she made no outcry—did not ask for help; that she did not offer to fight him in any way; that after he threw her on the floor he raised her clothing, and she tried to put her skirts down, but he did nothing to prevent her putting them down; that she said to him, "For God's sake don't do it."

Miss Stoler and Rucker were the only witnesses who testified as to what occurred in the bath room at the time of the act of sexual intercourse. Rucker testified that after she told him she was too tired to have intercourse with him and he would have to wait for awhile, he waited for several minutes and then asked her if she was going to have intercourse with him, and told her that if she was not he was going; that she then arose from the bath tub and extended to him her hands, and he took her by the hands and assisted her in taking a seat upon the floor; that after she was seated she lifted her clothing and then of her own accord lay down on the floor; that she made no objection or protest of any kind against having sexual intercourse with him, and she never said, "For God's sake don't do it." The parties both agree that after the act of intercourse they arose from the floor and again sat on the side of the tub, where they had a further conversation, and were seated there when the officer, Leonard Minor, came into the shop, about eleven o'clock, and found her with her arm either upon Rucker's shoulder or around his neck. The officer asked what they were doing there. She made no complaint of any kind to the officer at the shop. Bupp or Petit asked whether they were going

to allow the officer to take her. The officer replied, "Of course you are." The officer took her to the residence of the city marshal to get advice as to what he should do with her, and he let Bupp, Petit and Rucker remain at the shop without arresting them. To the city marshal she made complaint of having been mistreated by Bupp and Petit and a party from Decatur. From the marshal's house the officer went with her to the residence of M. A. Mattox, a justice of the peace, where she swore out a warrant charging Bupp and Petit with rape, but made no complaint against Rucker. On the way back up-town from Mattox's residence she told the officer that Rucker had intercourse with her. She testified that Bupp and Petit had whisky at the shop and wanted her to drink, but denied that she drank. She also denied that the plaintiff in error had any whisky or that he wanted her to drink. M. A. Mattox, the justice, testified that when she entered his residence he smelled whisky on her breath and noticed her clothing was muddy. He remarked to her, "It looks like you had been out on a lark," and she replied, "Yes, a small one," and further said, "I tripped and fell." The parties had been in the barber shop about half an hour before Rucker went to the shop. During the time they were in the shop they were singing. Miss Stoler claimed the singing was after Rucker entered the shop and that she took no part in it. Rucker claimed that there was no singing at the shop after he entered. Mert Carpenter, who was in a restaurant adjoining the barber shop, testified that he was sleeping and was awakened by the singing of the parties in the shop between ten and eleven o'clock; that he got up and went to the back door and listened, and could hear a lady's voice participating in the singing.

These are substantially the facts as they appear in the evidence, and the question is whether or not they are sufficient to convict the accused of the crime charged. Rape is the carnal knowledge of a female forcibly and against her

will. (Hurd's Stat. 1905, chap. 38, sec. 237.) The prosecutrix was eighteen years of age, and hence the element of force was essential to the crime. If she consented to the intercourse it was not rape. There is very little, if any, conflict as to the material facts. It is not claimed, nor is there a particle of evidence tending to show, that the plaintiff in error had anything whatever to do with getting the prosecutrix into the barber shop, or that he even knew that she was in town until he met Petit on the street. We must therefore look to what took place after the parties met in the bath room of the barber shop for proof of plaintiff in error's guilt of the crime. When he arrived at the shop and sat down with her on the side of the bath tub she permitted him to put his arm around her, and she admits that he asked her to have sexual intercourse with him. While there is some slight conflict as to what took place, yet we think the evidence of the prosecutrix herself shows that no force was used or that she resisted the advances of plaintiff in error. After the officer arrived she made no complaint to him against the plaintiff in error, nor while talking to the marshal. Her conduct was wholly inconsistent with the acts of a girl entirely innocent and upon whom a dastardly outrage had been committed, but is rather in accord with the conduct of persons guilty of practicing fornication or adultery. This record shows a case of moral depravity disgusting in the extreme, but it cannot be mistaken for the crime of rape. We think the element of force is entirely lacking, and that the evidence wholly fails to prove the plaintiff in error guilty of the crime with which he is charged.

The judgment will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.                    *Reversed and remanded.*