(No. 21914.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS SERRIELLE, Plaintiff in Error.

*Opinion filed October 21, 1933—Rehearing denied Dec. 12, 1933.*

DEYOUNG, FARTHING and SHAW, JJ., specially concurring.

SEYMOUR ELLISON, (JULIUS REZNIK, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, GRENVILLE BEARDSLEY, J. ALBERT WOLL, and FRANK S. RIGHEIMER, JR., of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county, on trial without a jury, of the charge of raping one Inez Earl, a widow fifty-eight years of age. Plaintiff in error denies the charge of rape but admits having had intercourse with her. There were no other witnesses

as to the actual occurrence, though some witnesses testified to matters occurring before and after the alleged rape.

The undisputed evidence shows that both the complaining witness and the plaintiff in error lived on the sixth floor of an apartment building in the city of Chicago, complaining witness' apartment being near the elevator. The elevator door opened on a balcony, which extended around the large inner court or air shaft. The door to the complaining witness' apartment opened on a narrow hallway leading at right angles from this balcony. A window of her apartment opened on the balcony almost opposite the elevator. This balcony was used by the tenants in going around the court or air shaft to reach the various apartments. Plaintiff in error's apartment was located some distance from the elevator, and in going from that apartment to the elevator it was necessary to pass the window of complaining witness' apartment opening on the balcony. There were twenty-six apartments on the sixth floor of this building. On October 19, 1932, between the hours of one and two o'clock in the morning, plaintiff in error went into the complaining witness' apartment. As to the occasion of his being there their versions differ. She testified that he without invitation came to her room dressed in his pajamas and a bathrobe. He told her he was lonesome, but that she told him she did not want to talk with him for fear of trouble with another woman with whom the evidence shows plaintiff in error was on friendly terms; that he had liquor, which he drank, but that she refused it, as she did not drink hard liquor; that they talked for a while on matters of politics and the like; that he picked her up, threw her onto the bed, put out the light and ravished her; that in so doing he tore her body, causing it to bleed. She testified that he remained on her for about five minutes, trying to make entry; that he tore her terribly, and that she said to him, "Serrielle, I will kill you," and that she pulled his hair; that she then screamed and

he put his hand over her mouth; that she hit him, and he told her he would choke her if she hit him again; that she got his hand away from her mouth and jerked away from him; that the elevator came up just then, and when the elevator door opened plaintiff in error jumped from her and ran out. She further testified that when she heard the elevator door open she went out of the room and saw plaintiff in error going toward his room; that in the hall she met the elevator man and lifted her dress above her knees, saying, "Look what that dirty beast has done to me!" On the following evening the complaining witness went to a hospital and was examined and made a complaint against the plaintiff in error.

Plaintiff in error testified concerning the occurrence, that as he left the elevator on the sixth floor and passed the window of complaining witness she was sitting there and called to him. During the conversation that followed she asked him if he had a drink. He replied that he did and went to his apartment, where he prepared to retire, and that she later knocked at his door, saying, "You are a nice one to promise a fellow a drink and don't come back with it;" that he went to her room with her and they both drank liquor and discussed a trip which he had recently taken to New York; that after taking a few drinks they sat on the bed, each with an arm around the other, and that finally both lay on the bed. He testified that she raised no objection to his having intercourse with her, and that after insertion, which he completed with difficulty, she told him she thought he had better get up, as she felt as though she had been torn apart.

Hinsley, the elevator operator, testified that early in the morning of the 19th he heard someone scream; that he was then in the lobby of the first floor; that he could not locate the place from which the scream came, but someone on the court balcony on the fifth floor pointed to the sixth; that he took the elevator to the sixth floor, where

he neither heard nor saw anything; that he walked through the back hall into the front of the building and saw plaintiff in error, wearing a bathrobe, coming from the hallway leading to Mrs. Earl's room, and that as he passed the witness plaintiff in error said: "Pay no attention to her; she is drunk;" that complaining witness called him and he walked over to her room but could not remember anything that she said, and that she showed him the inside of her knee, which was smeared with blood.

Ruth Miller, a tenant on the sixth floor, testified that about 1:15 A. M., October 19, she walked past the room of complaining witness and looked through her window and saw plaintiff in error sitting on the edge of the bed and complaining witness lying on the bed; that each had a glass and were drinking; that both were laughing and seemingly enjoying themselves, and that when she walked past the window on her return to her room the shade was drawn. She further testified that she had seen plaintiff in error and complaining witness together before that time at a party on March 17, 1932, and that complaining witness was drunk.

One Leo McGee testified that complaining witness gave him money and asked him to get her a bottle of liquor, which he did and drank with her in room 501, which was not her room.

One Roberta Robinson testified that on March 17, 1932, complaining witness was intoxicated at a party which they were attending and "kept hanging around" plaintiff in error all evening.

Plaintiff in error's employer, for whom he had worked as chauffeur for over ten years, testified to his good reputation.

In rebuttal, complaining witness categorically denied that she went to plaintiff in error's room to ask him for a drink or that she stopped him at her window; denied that she ever threw her arms around him and kissed him, and also denied that she had had anything to drink at the party on

March 17 or had asked McGee to buy liquor for her or drank it with him.

The trial court found plaintiff in error guilty and sentenced him to the penitentiary for a period of twenty-five years.

Plaintiff in error's principal argument is that the evidence of resistance on the part of complaining witness is insufficient to establish the crime of rape; that her credibility was impeached on material matters; that there was no corroboration of her evidence of rape, and that the court erred in considering improper and prejudicial evidence in fixing the sentence.

Rape is the carnal knowledge of a female forcibly and against her will. (Smith's Stat. 1931, chap. 38, par. 490.) The prosecutrix being over sixteen years of age, the element of force was essential to the crime and must be proved beyond a reasonable doubt. (*Rucker* v. *People*, 224 Ill. 131.) In order to prove the crime of rape the evidence must show that the act was committed by force, against the will of the female, and if she had the use of her faculties and physical powers the evidence must show such resistance as to demonstrate that the act was against her will. (*People* v. *Eccarius*, 305 Ill. 62.) It is incumbent upon the State to prove such resistance beyond a reasonable doubt. The act of intercourse being admitted, resistance became the gist of the offense charged. From her testimony alone must be gathered the proof as to that element of the crime. An analysis of her evidence does not show that when plaintiff in error put out the light and threw her onto the bed, as she testified, she made any resistance or unsuccessful effort to get away from him, nor that she screamed until, as she testified, she felt as though she had been torn apart. Up to this time her evidence shows no resistance on her part. There is no proof that the prosecutrix was unable to make resistance. These facts, when considered with the testimony of other witnesses

which contradict her statements that she did not drink liquor, that she had never been to any parties with plaintiff in error or asked about him, and that she did not drink any of the liquor that the plaintiff in error brought to her room, all tend to raise a reasonable doubt as to the proof of resistance on her part.

Revolting as is the crime of rape and deserving as it is of severe punishment when proved, the essential elements of the crime may not be presumed but it is incumbent upon the State to prove them beyond a reasonable doubt. Resistance not having been proved beyond a reasonable doubt by the testimony of complaining witness, even if taken as true, plaintiff in error was not proved guilty of the crime of rape beyond a reasonable doubt, and the court erred in so finding.

Counsel for plaintiff in error also argue that the court erred in his examination, prior to sentence, of the facts concerning aggravation or mitigation of the offense. Section 4, division 13, of the Criminal Code directs: "In all cases where the court possesses any discretion as to the extent of the punishment, it shall be the duty of the court to examine witnesses as to the aggravation and mitigation of the offense." This court has held that the right to have the court examine witnesses as to aggravation or mitigation of the offense was one accorded both to the people and to the accused. In *People* v. *Popescue,* 345 Ill. 142, *People* v. *Gerke,* 332 id. 583, *People* v. *Crooks,* 326 id. 266, and *People* v. *Pennington,* 267 id. 45, it was held that this privilege must be accorded when requested or desired either on the part of the People or the defendant, and that this privilege is one which may be. waived by the parties, and when waived some other method than the examination of witnesses may be resorted to,·to supply the court with necessary information concerning aggravation or mitigation of the offense. It follows, however, from the plain wording of the statute, that in the absence of such waiver

the court is to hear evidence and not mere statements of counsel or conclusions of witnesses. The language of the statute is, "it shall be the duty of the court to examine witnesses." In this cause, after the plaintiff in error had been found guilty, the court announced that it desired to ascertain whether the plaintiff in error had been in trouble before. Thereupon the State's attorney said: "We will state, your honor, that a previous record shows that at the time of the commission of the act in question he was on parole from a sentence of one to fourteen years in the penitentiary at Joliet.

The court: "One to fourteen?

State's attorney: "No. Let me see if I am right. It is November, 1916. There is a verdict for attempted rape, by Judge Miller. The sentence isn't stated and amount isn't there. Have you any information on that, officer?

Answer by a police officer: "It is one to fourteen, your honor, as far as I know. I think they have a copy of the record in the files there."

The truth or falsity of the statement of the officer was not shown. There being nothing to indicate a waiver of the hearing of evidence, it was incumbent upon the court to use care to determine the accuracy of the statements of the State's attorney and the police officer that the accused had been sent to the penitentiary on a similar charge some thirteen years before, as such statement tended to show that the plaintiff in error was a recidivist, and, of course, strongly tended to influence the judgment of the court in determining the severity of the sentence.' Though in this case reversal would not be ordered on this error, alone, as such an objection seems not to have been made, yet as this cause must be tried again it is important that the trial court bear in mind that the wide powers given to it in the matter of fixing the punishment in such a case be carefully guarded against error. The purpose of the statute quoted is to apprise the court of facts which tend to aid it in fixing

proper punishment, and, of course, such evidence does affect the severity of the punishment.

For failure to prove, beyond a reasonable doubt, the necessary element of resistance, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE SHAW, specially concurring:

I concur with this opinion and with the result reached, but think that it should go further than it does in its ruling on the questions asked and procedure adopted by the trial judge in determining the punishment to be inflicted. In my opinion it should definitely state that upon the examination the judge was limited to and bound by such evidence and proofs as might be received under the rules of evidence on any other inquiry. If competent at all, proof of a former conviction should be made by the record and not by the remarks of a bystander; that no unsworn testimony should be received, but, on the contrary, everything presented to the court should be guarded and protected by the sanctity of an oath, and that anything which might be interpreted to the contrary in *People* v. *Popescue,* 345 Ill. 142, should not be adhered to.

I also think that the opinion should have ruled definitely that even if plaintiff in error committed an offense fourteen years previously, for which he paid the penalty, it would not be so intimately connected with the crime for which he was on trial as to make it admissible. Any other rule would be an effectual bar to any person ever atoning for past offenses or obtaining any benefit from a reformation of character.

Mr. JUSTICE DEYOUNG and Mr. JUSTICE FARTHING join in this special concurrence.