(No. 25443.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD RILEY *et al.* Plaintiffs in Error.

*Opinion filed April 10, 1941.*

WM. SCOTT STEWART, for plaintiffs in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (WILBERT F. CROWLEY, EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Edward Riley and Orville Watson were sentenced to death in the criminal court of Cook county on their pleas of guilty to an indictment charging them with murder of Alex Ferguson. These pleas were entered after defendants were duly advised by the trial court as to the nature of the charges against them, after being duly warned and cautioned as to the effect of their pleas and as to the penalties which might be inflicted upon them. In open court they each stated that they had been given no promise of reward or immunity and there is no reason apparent to this court for interfering with the judgment of guilt entered pursuant thereto.

After the entry of these pleas the court proceeded to comply with section 4 of division 13 of the Criminal Code (Ill. Rev. Stat. 1939, chap. 38, par. 732) concerning cir-

cumstances in mitigation or aggravation of the offense, and in the course of this hearing received in evidence all of the circumstances surrounding the murders and also the previous criminal record of each of the defendants. At a previous term of this court we arrived at an opinion in all respects affirming the judgment and sentence of the trial court, but upon a petition for rehearing decided further to examine into the procedure adopted by the court in connection with the hearing on the question of mitigating or aggravating circumstances. It is thus that the cause is before us now and inasmuch as the prior opinion has not been published, we think it appropriate to restate the facts.

There is no substantial dispute as to these facts nor is there anything brought forward in any part of the record to indicate that there could be any dispute. On May 2, 1939, there were a number of persons in a tavern on North Western avenue in the city of Chicago, among them three policemen in plain clothes who had just previously been relieved from duty. The defendants Watson and Riley entered, and, after pretending briefly to be customers of the place, produced pistols, ordered every one to put their hands on the bar and announced that it was "a stick up." One of the policemen resisted, shooting followed, and after Riley and Watson had departed all three policemen were on the floor, two of them dying, who afterwards did die, and officer McIntyre, who was shot through the head but eventually recovered. Officer Ferguson, who was named in the indictment was one of those who died.

Leaving the tavern Watson received a bullet in his spine from the pistol of one of the officers. His partner Riley took Watson to the latter's apartment where he was living with a woman not his wife, and proceeded to get a surgeon for him. This was accomplished by giving a fictitious name and a fictitious pretense to the doctor who was called and then forcing the doctor at the point of a pistol to go to the apartment. On arriving there the doctor protested

he had no instruments, but the woman in the case produced an old razor blade and under threat of Riley's weapon the doctor was compelled to remove the bullet from Watson's spine, with no other instrument and without any anesthetic. Riley and the woman then took Watson down to their waiting automobile and absconded from the State, being captured the next day in Detroit, after a chase by a Detroit police car and an effort to dispose of one of the incriminating pistols. The foregoing facts are all conclusively proved by the testimony of many witnesses and admitted by the free confession of each of the defendants.

At the conclusion of the hearing as to aggravating or mitigating circumstances the assistant State's attorney read into the record what purported to be the previous criminal record of the defendants. The more serious items in this previous criminal record had already been proved by the testimony of a policeman to whom they had been freely admitted, and this witness had already testified that the defendants had also admitted more than a score of hold-ups and the shooting of an oil station attendant. It is apparent that some of these items mentioned by the assistant State's attorney should not have been presented. It was not only incompetent but immaterial that Riley had been arrested in New Orleans nineteen years previously when that arrest was not followed by any prosecution or conviction. It was likewise incompetent and immaterial that he had been arrested twenty-two years previously on what must have been a petty larceny charge. As to Watson it was immaterial and incompetent to show he had been arrested eight years before on an armed robbery charge, on which arrest he was discharged and which detention must have been unsubstantiated. It was unnecessary and unfair on the part of the prosecutor to include these immaterial matters and an error on his part which might very easily bring about a reversal of the judgment in some cases. On a hearing of this kind the prosecutor is under both a legal

and moral duty not to offer anything for the consideration of the trial judge which may be of doubtful competency and materiality. On this kind of a hearing the attorneys must be held accountable for the highest ethical standards and if it can be seen that a breach of such standards has prejudiced a defendant it must be expected that any sentence so attained will be set aside. We must, therefore, direct our inquiry to a determination of whether or not anything that happened in the criminal court of Cook county has materially or substantially prejudiced these defendants.

The briefs for plaintiffs in error and their petition for rehearing are replete with quotations from and citations of cases in which a death penalty resulted from a trial on a plea of not guilty. That cases of this sort are not in point here was clearly pointed out in *People* v. *Popescue,* 345 Ill. 142. We made it clear in that case that the position of one who has pleaded guilty is decidedly different from one who asserts his innocence and goes to trial on a plea of not guilty. None of the cases and none of the language in cases which arose on a plea of not guilty is applicable to the case at bar and need not be considered in this opinion.

Any person indicted stands before the bar of justice clothed with a presumption of innocence and, as such, is tenderly regarded by the law. Every safeguard is thrown about him. The requirements of proof are many, and all moral, together with many technical, rules stand between him and any possible punishment. After a plea of guilty admitted murderers are in a much different position. As such they are felons. Instead of being clothed with a presumption of innocence they are naked criminals, hoping for mercy but entitled only to justice. What might, at their own choice, have been an issue to be determined by a jury has been changed into an inquiry by the result of which the discretion of the trial judge is to be exercised in determining their punishment. This judge is confronted with the immediate necessity of determining whether he shall

impose a sentence of fourteen or more years in the penitentiary or that the welfare of society and the determent to crime require the death penalty, which he is fully authorized to impose. The statute requires that he hear evidence in aggravation or mitigation of the offense and the clear intent of this statute is that he shall hear such evidence as will the better enable him to exercise that wide judicial discretion which has been placed in his care. (*People* v. *McWilliams*, 348 Ill. 333.) In *People* v. *Popescue, supra,* we held that under such circumstances the evidence of other prior crimes was admissible. Our holding in the *Popescue case* was in accordance with the rulings in other States. We reviewed many of these cases in that opinion and it will serve no useful purpose to review them again in this one. An annotation on the subject will be found in 86 A. L. R. 832, wherein it is intimated that our own holding in *People* v. *Corry,* 349 Ill. 122, is in conflict with the general rule. The annotator inadvertently failed to notice that the trial in the *Corry case,* although before a court without a jury, was nevertheless on a plea of not guilty.

Obviously the trial judge owes the same duty to the defendant to protect his own mind from the possible prejudicial effect of incompetent evidence that he would owe in protecting a jury from the same contaminating influence. The prosecutor in such circumstances owes the duty of not only protecting the defendant but also the judge from such prejudicial matter.

It is not seriously contended in this case that the defendants are not guilty of murder, but only that with proper time to prepare, and with more competent counsel, the punishment might have been less than that inflicted by the trial judge. Needless to say, present counsel did not represent the defendants in the trial court and his criticism of the conduct of the trial was practically the only reason suggested for reversal. Numerous cases have been cited wherein, out of a tenderness for human life, we have re-

versed judgments carrying a death penalty because we thought the defendant had not been competently defended. These have all been cases where the issue of guilt or innocence was contested on a plea of not guilty and none of them can be said to be controlling in this one. It is said that counsel in this case who acted for the defendants were young and inexperienced and each of these statements is true. That, however, is not the controlling question. The point for our consideration and decision is whether or not the youth and inexperience of counsel resulted in prejudice to the defendants. The record shows that these counsel asked for a continuance in order, as they said, to make some investigation at Detroit to try and find mitigating circumstances. Whether such circumstances were to be found in family history or some other obscure source is not apparent, nor is it apparent even now that any such fact or circumstance ever existed. Certainly their affidavit for continuance is subject to technical criticism, but it probably represents all they had to work with. In *People* v. *Dale*, 355 Ill. 330, we pointed out that the time to prepare for a trial does not include time to concoct a non-existent defense, but only such time as may be necessary and reasonable for the preparation and presentation of whatever defense the defendant has. A month elapsed between arraignment and trial in this case and it has never been made to appear, nor is there even a hint, that the defendants had anything to present which was not presented.

That counsel in the trial court were inexperienced is not to be denied and whether or not they were incompetent is quite another matter and not one lightly to be raised nor casually passed upon. Experience will come with the passage of years and only the passage of those years will eventually determine the question of competence. The precise question now before us is whether or not anything done by the inexperienced counsel selected by the defendants has materially prejudiced them. In this connection it must be

recognized that the defense of these two murderers presented no easy problem for any counsel no matter how experienced. Their clients were confronted with the immediate necessity of making a choice and taking a gamble. They might plead not guilty with a jury trial, plead not guilty with a trial by the court, or plead guilty with a resultant hearing in aggravation or mitigation of their crime. The record shows there was a practical certainty of conviction, whether tried by a court or a jury, and the only thing which the most experienced lawyer could determine was whether they would have a better chance to escape the death penalty by the one plea or the other. They knew that on plea of guilty one man would be burdened in mind and conscience with deciding whether or not they should be put to death, and that on plea of not guilty that responsibility would be divided by twelve. Under identical circumstances many lawyers of the greatest wisdom and with the widest experience have chosen to place the burden on one man, rather than to take a chance with a jury. The decision which these young lawyers were compelled to make or advise upon could not have been easy. They must have known that a jury trial would almost certainly have resulted in a death sentence. At the same time they must have known that after a plea of guilty, on hearing before the court the past record of these criminals would rise up to confront them. When a lawyer, whether young or old, is attempting to represent a guilty and confessed murderer, he finds no smooth or easy path, nor is it intended that he should. We are unable to say from this record that these young lawyers did not choose as good a course of procedure as any other that was open to them.

In passing sentence upon a guilty criminal the trial judge is invested with complete judicial discretion within the limits of punishment fixed by law. If that discretion has not been abused and if the prisoner at the bar has not been materially prejudiced by the procedure which the court

adopts in conducting the inquiry required by the Criminal Code this court will not interfere with the judgment pronounced. Our disposal of this case must depend upon our decision on this broad question and our determination of that point involves but two considerations. First, were the defendants prejudiced by the means adopted to inform the trial court as to the previous criminal record of these two· defendants and, second, were the defendants materially prejudiced through the courts being informed of the immaterial matters above mentioned?

In *People* v. *Serrielle,* 354 Ill. 182, a similar procedure was adopted and was criticised by this court in its majority opinion and entirely repudiated by the special concurrence of three judges. The court was thus unanimous that the method was improper. It was pointed out, however, in the majority opinion that in that particular case a reversal would not have been ordered on that ground alone. The judgment was reversed on other grounds. In that case no objection to the method of proof was made and there was no such objection in the case we are now considering. In view of the fact that there is not now and never has been any intimation that the previous criminal record was not as represented, it would have been of doubtful wisdom on the part of defense counsel to make objection. The defendants were in court and neither in person nor by counsel questioned or denied any part of their previous record. Proper and timely objections might have required the prosecutor to get certified copies of the various judgments of conviction against them, but tact and diplomacy on the part of their counsel would probably dictate that the People should not be put to this unnecessary trouble and the trial judge to this unnecessary delay. We do not approve of the procedure in this case and careful prosecutors will avoid using it. In the present case we cannot say that the defendants were prejudiced through failing to require more formal proof.

As above indicated certain parts of the criminal record were not properly admissible, but they seem to us to have been trivial and unimportant. It would be a reflection on the fairness and judgment of the trial court to assume, or for a moment to believe, that these trifling matters could have tipped the scales against these defendants or seriously impaired their standing before him. In *People* v. *Murphy,* 276 Ill. 304, the death penalty was imposed and an error occurred in the trial which under some circumstances might have been considered prejudicial, but which we held was not in that case. In disposing of the point this court said: "It should not be and is not the policy of this court to reverse a judgment merely because error has been committed, unless it appears that real justice has been denied thereby or that the verdict of the jury or the judgment of the court may have resulted from such error. There is no such showing in this record, and the judgment of the circuit court is affirmed." *People* v. *Cardinelli,* 297 Ill. 116, is another case in which this court affirmed a judgment and sentence inflicting the death penalty notwithstanding trifling errors. In that case we said: "As we have said, this record is not free from error. The purpose of a reviewing court, however, is not to determine whether the record is perfect, but its purpose is to determine whether defendant has had a fair trial under the law and whether his conviction is based on evidence establishing his guilt beyond all reasonable doubt. Where it can be said from the record that an error complained of could not reasonably have affected the result of the trial the judgment of the trial court should be affirmed." In *People* v. *Haensel,* 293 Ill. 33, we said that where it can be said from the record that an error complained of cannot reasonably have affected the result of the trial the judgment should be affirmed, and in that case it was affirmed, notwithstanding the death penalty was imposed. In *People* v. *Anderson,* 239 Ill. 168, a death penalty was affirmed notwithstanding an error in an instruction in

failing properly to limit the application of the confessions made by the various defendants.

We are unable to find or believe from this record that the trial judge in any way abused that judicial discretion which the law has expressly committed to him. The judgment of the criminal court of Cook county will therefore be in all respects affirmed. Friday the thirteenth day of June, A. D. 1941, is fixed as the time when the original sentence of death shall be executed. The clerk of this court shall furnish the sheriff of Cook county with a certified copy of this order as provided by statute.

*Judgment affirmed.*