(No. 28717.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH KADLECEK, Plaintiff in Error.

*Opinion filed September 19, 1945—Rehearing denied Nov. 19, 1945.*

JOSEPH KADLECEK, *pro se.*

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WIL-

SON, JOHN T. GALLAGHER, MELVIN S. REMBE, and C. D. PEMBERTON, all of Chicago, of counsel,) for the People.

Mr. JUSTICE MURPHY delivered the opinion of the court:

In an indictment returned in the criminal court of Cook county, defendant Joseph Kadlecek was charged with the crime of murdering Ella Pehrson Johnson during the night of November 16, 1938. Defendant selected his own counsel to represent him and, after the lapse of a reasonable time for preparation of the case, defendant tendered a plea of guilty. He was advised as to his rights but he persisted in his plea. It was accepted and a hearing of evidence was had in aggravation or mitigation of the crime, pursuant to section 4 of division XIII of the Criminal Code. (Ill. Rev. Stat. 1939, chap. 38, par. 732.) He was committed to the penitentiary for sixty years. He has sued a writ of error out of this court to review the record.

The errors assigned are (a) that the evidence introduced on behalf of the People was unreliable, incompetent, and a part of it of such a character as to create an undue prejudice against defendant, (b) that defendant was intoxicated when he committed the crime, and (c) that he did not have a proper defense in that his attorney was incompetent.

Defendant was 26 years of age at the time of the trial. He was born in Texas and came to Chicago when quite young. He had been employed by the same employer for more than twelve years. Shortly before the commission of the crime, he had sustained a physical injury causing a temporary layoff from work. There is some evidence that during such period he was drinking, but the extent of the same is not shown. Several witnesses testified as to his previous good record as a law-abiding citizen. On the hearing the State's Attorney conceded that he had no previous criminal record. For a time he resided in the home

of a married sister, but for the year preceding the commission of the offense, he lived in a rooming house on West Warren avenue, Chicago. He prepared some of his meals in his room and kept certain articles there for that purpose, including a carving knife.

Deceased, aged 36, sold cosmetics direct to the consumer. In her solicitation of orders she called on defendant at his room. Others residing at the same place were also solicited by her. About 7 P. M., November 16, 1938, she called at the rooming house and asked permission to see defendant at his room on the second floor. The request was denied on the false premise that defendant was not in his room. Defendant overheard the conversation between deceased and the manager and interfered, giving directions that deceased be permitted to come to his room. She entered the room but there is no evidence of any outcry or disturbance coming from the room. The next day the manager of the house and one of its occupants found her nude body stuffed into a clothes closet in defendant's room. There was blood on the bedding and other articles in the room. Defendant's carving knife was nearby and there were two stab wounds in her right breast. The medical testimony was that such wounds caused death. Defendant was not in the room when the body was found but was arrested later the same day. At the time of the arrest, the police took from him a watch which belonged to the deceased. His underwear and hat were spotted with blood. In the presence of police officers, he answered questions propounded to him by the assistant State's Attorney. He admitted his guilt and such questions and answers were reduced to writing and signed by him. These statements were introduced on the hearing of evidence in aggravation or mitigation of the offense. No objection was made to their admission at the time of the offer and there is no claim that they were not voluntarily given. Except for the evidence of the arresting officers and the manager of the rooming house, the People's

evidence consisted of defendant's signed statements. The watch of the deceased and the carving knife were introduced as exhibits.

In the written statements defendant detailed the commission of the crime and his movements thereafter to the time of his arrest. He fixed the time of Ella Pehrson Johnson's arrival in the room at about 9 P. M. He stated that they had a drink. He says she would not stand for his advances and he hit her, causing her to fall on the bed, that he then stabbed her twice with the carving knife and then removed her clothing, throwing it under the sink. He left the room to obtain a drink, returning in about an hour. He said that when he returned the body was on the bed and that he then placed it in the closet where it was found the following day. He went from his room to a tavern at the intersection of Madison and Lincoln, and from there to the home of a married sister. He talked to his sister and brother-in-law about some money he had in a bank and went from the sister's home to a hotel at State and Harrison where he engaged a room and registered under the name of Joe Cane. By some means not shown by the evidence, he contacted his brother at Ft. Sheridan and made arrangements pursuant to which he and his brother went to the bank where defendant was taken into custody by the police.

On the hearing, defendant testified that he started drinking to excess on the day preceding the murder and from the evening of that day to the evening of the day following the crime he could not remember where he was or what he did. The manager of the rooming house testified that he was drinking during the day of November 16.

The evidence which defendant claims was of such character as to create a prejudice against him was contained in his signed statement. It is that part in which he told what he did to the body of the deceased after the stabbing and after her clothing had been removed. There is no

claim that such evidence is not true, but it is argued that it was of such a revolting nature as to prejudice the court against him in the fixing of a penalty. It is not necessary to detail such evidence. It was admissible and in view of the circumstances under which the crime was committed, it can not be said that it was likely to create a prejudice that was not warranted by the facts. In *People* v. *Riley,* 376 Ill. 364, it was said that in passing sentence upon a defendant who has pleaded guilty to a crime of this character, the trial judge is invested with complete judicial discretion within the limits of punishment fixed by law. If that discretion has not been abused and if the prisoner at the bar has not been materially prejudiced by the procedure which the court adopts in conducting the inquiry, this court will not interfere with the judgment pronounced.

The assignment in reference to defendant's intoxication at the time of the commission of the offense is without merit. The evidence does not come within the exceptions (Ill. Rev. Stat. 1939, chap. 38, par. 599,) which permit a defendant to interpose, as a defense, his drunken condition at the time of committing the crime.

There is no evidence to show what experience, if any, defendant's counsel had in the practice of the law. The uncertainty of the outcome of a jury trial in this case was similar to that in *People* v. *Riley,* 376 Ill. 364. Under the circumstances there we held that it could not be said that the defendant had not been fully and fairly represented in the case although his counsel were young and inexperienced. The facts in this case lead to the conclusion that defendant could not have expected any lesser penalty than that which was imposed.

Judgment of the criminal court is correct and is affirmed.                                        *Judgment affirmed.*