The People of the State of Illinois, Plaintiff-Appellee, *v.* William Bowlin, Defendant-Appellant.

(No. 70-65; ▮▮▮▮▮▮▮▮▮▮▮)

Fifth District—June 9, 1971.

Morton Zwick, of Defender Project, of Chicago, (Matthew J. Moran, of counsel,) for appellant.

Frank Bonan, State's Attorney, of McLeansboro, for the People.

PER CURIAM:

Defendant William Bowlin appeals from a conviction in a jury trial in the Circuit Court of Hamilton County for burglary in violation of Ill. Rev. Stat. 1969, ch. 38, sec. 19—1, for which he was sentenced to the penitentiary for a term of three to ten years.

Patricia Moore, the complaining witness and sister-in-law of defendant, testified that she lives in Dahlgren, Illinois, and that on or about July 22, 1969 she was in St. Louis staying with her husband who was in Barnes Hospital. When she returned home on July 23, she discovered that the window of her back door was broken out and that her portable television set, the record player and lawnmower were missing. There were footprints of a man all over the house. She did not give anyone permission to take this property away from her home. She reported the loss to the sheriff's office and described the property stolen to the officers. These items were introduced into evidence.

She testified to an occurrence which happened two to four weeks prior to the theft when she drove the defendant's wife (defendant's wife is the witness's husband's sister) to defendant's home. Defendant's wife had told her that they were having an argument. When they arrived defendant came out of the house, pulled his wife from the car and started beating her. The witness told him to stop and defendant pulled a small pistol from his pocket, pointed it at the witness's head and told her that he would kill her if she did not leave.

William Smith testified that he is a deputy sheriff of Hamilton County. During his investigation at the Moore home, Mrs. Moore told him that she had had some trouble with defendant. He called the sheriff's office in Benton and related this information. They told him that the night before one of their officers had seen a lawnmower in the back of a car. After defendant's arrest, they obtained a search warrant for defendant's house and outbuildings and pursuant to a search under that warrant they found the lawnmower behind his house and the record player and television in the basement in a cabinet.

On cross-examination he testified that when they picked up defendant he admitted to them that he had taken the items and that he was going to keep them until the Moores got home. He told the officers that he knew he could straighten this matter out with the Moores.

Defendant testified that he lived in Buckner at the time of this occurrence. He is married and has two children and is a laborer on construction. With regard to the incident which occurred prior to the burglary, he admitted having a heated argument with his wife and Pat Moore, but denied threatening her with a gun. After this incident, but before July 22, he and his wife had another fight and she went to Pat Moore's house again. Upon returning from the Moore's house he talked with his wife and his wife's sister about taking the Moores' valuable property from the house for safekeeping. This matter was discussed again at his mother-in-law's house prior to July 22. He said that his wife insisted that he pick up the property from the Moores' house. A neighbor, Ralph Reid, went with him. He climbed in through the kitchen window and picked up the television set and record player. Reid stayed in the car. The garage door was opened about a foot, so they took the lawnmower and put it in the trunk. It was plainly visible because the trunk lid would not close and they made no effort to hide it. On returning to Buckner, through Benton, he saw the officer who had reported seeing him with the lawnmower. When they got home his wife was awake. He put the lawnmower in the garage and the other items in the basement in a storage cabinet so their children would not get into it. The next day he could not get his car out of the garage so he moved the mower to the shed in the back. He intended to return the items as soon as the Moores returned home. He took them home because his wife told him that she was worried about them.

His testimony as to the reason he took the property in question was corroborated by his wife and mother-in-law.

■■ Defendant first contends that he did not receive a fair trial because of the evidence introduced by the prosecution concerning the incident which occurred two weeks to a month prior to the commis-

sion of the burglary during which defendant allegedly threatened to kill the complainant, Pat Moore, and allegedly beat his wife. Defendant argues that this evidence was not material to any issue involved in the trial and served only to prejudice the jury and introduced evidence of other offenses committed by the defendant, otherwise not admissible, and that this evidence does not come under any exception to the rule precluding evidence of the commission of other crimes which permits such evidence to establish identity, intent, knowledge, motive or a common scheme or design material to an issue on trial. (*People v. Cage,* 34 Ill.2d 530.) Defendant's attorney did not object to any of the testimony concerning this incident and, in fact, offered other evidence to explain and rebut it. Defendant urges, nevertheless, that we recognize this as error pursuant to Supreme Court Rule 615. The critical issue of fact for the jury to resolve in this case was defendant's intent in removing the items allegedly stolen from the complainant's home. Therefore, we do not believe that facts relating to this incident were wholly irrelevant to establish the relationship between defendant and the complainant, and in the absence of an objection in the trial court, we do not regard the error, if any, as so prejudicial to the defendant that it denied him a fair trial and we do not regard it as plain error.

■■ Defendant next contends that his representation by court appointed counsel was of such low quality that it deprived him of his right to counsel and a fair trial. In order to sustain such a position, defendant must establish actual incompetency of counsel as reflected in the manner of carrying out his duties and substantial prejudice resulting from such incompetency, without which the outcome would probably have been different. (*People v. Morris,* 3 Ill.2d 437.) We have carefully considered the entire record in this case as well as the manner in which counsel was alleged to be incompetent and we find defendant's contention to be without merit.

Finally, defendant argues that the sentence of three to ten years imposed in this case was excessive and argues that the court considered improper evidence in evaluating the sentence to be imposed.

Pursuant to the request of the court, Ray Carrell, a probation officer, made an investigation for the purpose of assisting the court in determining the penalty to be imposed and prepared a probation and presentencing work sheet for the court which was shown to the defendant for examination. The report stated that the defendant was known to Ray Carrell for about seven years, that he was a musician who played drums in a band, that he had been known to associate with band members who are known to be on narcotics and he associates with "criminal type characters". It further stated that defendant has been known for several

years to be a "fence for stolen property" and that he has been mixed up in thefts, burglaries and forgeries, but that the defendant had never been convicted. It further stated that the defendant's father had spent several thousand dollars to get defendant out of trouble and that defendant was "obviously a habitual criminal." The report disclosed several arrests for deceptive practices and thefts, some of which showed no disposition and some were shown as pending. Statements of certain persons were attached indicating their participation in criminal activity, unrelated to the present offense, with the defendant. A pending information charging defendant with theft in Franklin County was introduced. Ray Carrell did not testify.

At the hearing in aggravation and mitigation Charles Spruell, an Illinois State Police detective, testified about an investigation which he made concerning defendant's participation in the passing of bad checks on certain occasions in which defendant allegedly provided checks or vouched for checks and the items purchased. On two occasions Pat Moore called him to complain that defendant had threatened her if she did not drop the present action. Defendant was never brought to trial on any of the charges investigated by the witness.

Patricia Moore testified that she has known defendant for about eight years. While the present charge was pending, defendant called her repeatedly requesting that she drop the charges and offering to pay her money. He threatened to "get even" with her if she did not drop the charges. On one occasion she saw him with a sawed-off shotgun in his car. On several occasions defendant's wife came to her home because she had left defendant after they had had fights and she was afraid he would beat her up. She reiterated the incident in which the defendant threatened to kill her if she did not leave defendant's home.

Bud Bowlin testified that he is in the grocery business and is defendant's first cousin and has known him all his life. He arranged a job with a construction company for the defendant and he thinks that defendant is a hard working man. He agreed to supervise the defendant if he is granted probation.

Shirley Bowlin, defendant's wife, testified that she has been married to him for eleven years and that they have two children, ages 10 and 4, and that she is pregnant. She is willing to cooperate with and help the defendant to work hard and provide a good home to raise their family.

Defendant testified that he has never previously been convicted of a crime. In the past he has worked primarily as a construction worker but also plays in a band. He has worked since he was eighteen years of age in the coal mines and in construction. He presently has an offer of employment with a construction company as a laborer. Defendant expressed

his remorse for his past behavior and stated that he would make every effort to improve his conduct. During the trial he has continued to work in the band and generally makes $25.00 a night or more, working from ten o'clock at night until one thirty in the morning.

In closing, the prosecutor emphasized the testimony and report of the defendant's prior participation in illegal activity other than the present offense, his stormy marital life and the fact that he worked in a band, primarily in taverns.

■■ It is clearly error for the trial court in the sentencing process to consider evidence of defendant's prior arrests which did not result in convictions, *People v. Jackson*, 95 Ill.App.2d 193; *People v. Grigsby*, 75 Ill.App.2d 184; *People v. Riley*, 376 Ill. 364, and sentence based on such improper evidence will not be permitted to stand. (*People v. Crews*, 38 Ill.2d 331.) There was direct evidence in this case of previous charges brought against defendant which did not result in convictions and there were statements in the presentence report that defendant was known to be a "fence for stolen property", and has been mixed up in previous thefts, burglaries and forgeries, but had never been convicted and that defendant is "obviously a habitual criminal". The court indicated after the hearing in aggravation and mitigation that defendant had been charged but never convicted of anything, apparently prior to this conviction, and that the court considered the presentencing report in determining what type of sentence should be imposed upon defendant.

There is other competent evidence in the record that defendant, who is forty years of age, had never previously been convicted. He works as a musician and as a construction laborer whenever there is work and he had a job at the time of sentencing in this case. His wife and cousin testified that they were willing to help him in any rehabilitation process at home. He had two children and his wife was pregnant. Defendant expressed remorse over his past behavior and promised to modify his conduct. Finally, we note that the offense in this case involved a "family feud" in which no violence was involved and the items were returned.

■■ For the reasons herein set forth, the judgment and sentence of the Circuit Court of Hamilton County are modified to provide that the sentence imposed on defendant be confinement in the penitentiary for a term of not less than one year nor more than three years, and as so modified, the judgment is affirmed.

Judgment modified, and as modified, affirmed.