(No. 14690.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD ECCARIUS *et al.* Plaintiffs in Error.

*Opinion filed October 21, 1922.*

1. CRIMINAL LAW—*evidence as to previous chaste character of prosecuting witness is proper in rape case.* In a prosecution for rape there is a presumption of law that the prosecuting witness has previously been chaste, and the prosecution need not offer any evidence on that subject unless her character is attacked, but her testimony that she had never previously had sexual intercourse is admissible, and where it appears from the evidence that she was resident at a home for working girls in the city of Chicago, evidence as to the character of the home is admissible to rebut any inference that it was for the reformation of girls.

2. SAME—*when an instruction as to what constitutes force is erroneous in prosecution for rape.* Rape is the carnal knowledge of a female forcibly and against her will, but there is no rule of law as to what particular acts constitute force, and it is error to give an instruction enumerating the different circumstances from which the jury are to decide whether the acts complained of were against the will of the prosecuting witness, as the jury must determine from the evidence, without the aid of the court, whether the prosecuting witness made or was able to make sufficient use of her faculties and physical powers to demonstrate that the act was against her will.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN A. SWANSON, Judge, presiding.

ERNEST C. RENIFF, and CHARLES P. R. MACAULAY, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiffs in error, Edward Eccarius and Forrest Bowers, were convicted in the criminal court of Cook county of the crime of rape and sentenced to seven years' imprisonment in the penitentiary in accordance with the verdict of a jury.

Grace E. Moore, eighteen years of age, came to Chicago about June 9, 1921, secured employment with Albert Pick & Co. as an adjuster in the office, and went to live at the Queen Esther Home, 1906 Prairie avenue, a rooming and boarding house for working girls maintained by the Home Missionary Society of the Methodist Episcopal Church. On Saturday, July 9, the office where the girl was employed was closed at noon and the occurrence which formed the basis of the charge occurred that night. Acts of intercourse by the defendants with Miss Moore were admitted, and the only controverted question was whether they were voluntary on her part or by force and against her will.

The testimony of Grace E. Moore was substantially as follows: Girls living at the home were required to be there at ten o'clock at night unless they had keys, with permission to stay out until twelve. She left home after supper on Saturday night without a key and went to moving pictures at McVicker's Theatre alone, wearing a brown silk dress.

A little after ten o'clock she left the theatre and walked south on Michigan avenue, and when she reached the Southern Hotel, near Twelfth street, she was annoyed by a stranger and went into the lobby of the hotel to avoid him and there talked to a colored porter without any particular object. She left the hotel and went down Michigan avenue about half a block and the defendants drove up to the curb in an automobile and invited her to ride home with them. She walked away, but seeing the stranger following, she accepted the invitation and gave her address. They drove south about two squares to a garage at Eighteenth street and got gasoline. Bowers was driving and she sat with Eccarius on the back seat and supposed they were going to take her home. They drove on south, and she asked to be taken home but Eccarius held her in the car. Bowers drove to some saloon and the defendants asked her to go in with them and have drinks and promised to then take her home. She entered the saloon with them and drank two-thirds of a glass of beer because she was afraid and very thirsty. The party then returned to the car and the defendants promised to take her home but drove south. She tried to scream but Eccarius held her and they drove on south to a prairie, where the defendants dragged her out of the car. Eccarius took her a short distance from the car and in spite of her resistance threw her down on the grass and committed the act charged. Bowers then committed the same act, and after Bowers got up Eccarius repeated the act. Her dress was dirty and ruined and her clothes torn. She thought she must have become unconscious, because the last thing she remembered she was still lying in the prairie, sore and stiff and unable to get up, when it was becoming light. She was put back in the car and Bowers drove back to Michigan avenue and Sixteenth street and then to Indiana avenue and stopped under a railroad viaduct. It was then early in the morning and she could not go to the home, as it was not open. The defend-

ants went to sleep and she saw a man on the platform of an express office and told him about the affair. He went away and she stayed there talking to the defendants, sitting in the car until a detective came, and during that time Bowers gave her fifty cents. The detective took the parties in the car to the Queen Esther Home and then took them to the Clark street detective station. The next morning she was taken to the juvenile court and after that was sent home. All the acts of the defendants were committed with force and against her struggles and resistance.

The defendants testified that the acts of Grace E. Moore were voluntary, and this was their account of the occurrence: They were driving in a Ford car, going north on the east side of Michigan avenue about 1 :30 in the morning of Sunday, July 10. As they passed the Southern Hotel Miss Moore waved to them from the west sidewalk and they turned around and drew up at the curb. She got into the car to take a ride and gave them her address, but when they reached Eighteenth street she said that it was too late to get into the home as the doors were locked, and they went on south. Bowers was driving and stopped at a garage at Fortieth street and Michigan avenue and got some gasoline and water, and she was sitting on the back seat with Eccarius, hugging and kissing. They then drove to a saloon at Fifty-fifth and State streets and stayed there about three-quarters of an hour and drank some near beer. They then drove to Sixty-seventh street and Marquette Park. On the way Eccarius solicited her, and she asked him if he had any money and he told her he had $1.25, and she said that was all right and he paid her $1. At Marquette Park she got out with Eccarius and objected that the grass was wet, but she laid down on the grass and Eccarius had intercourse with her. She then permitted Bowers to have intercourse, and she said that was enough. They stayed at that place some time and then drove back to the Queen Esther Home and at her request drove on and stopped under the via-

305—5

duct at Sixteenth street, arriving there at about five o'clock. She complained that her dress had been ruined and wanted $15, and Bowers then gave her fifty cents, which was all the money he had. An officer came and the parties were taken to the detective bureau and questioned and statements were drawn, which were signed. The witnesses said these statements were not written exactly as made. According to Bowers' statement each of the defendants had intercourse with Grace more than once, but the defendants testified on the trial that they had such intercourse only once. She testified that her dress was torn and soiled, and she asked the defendants to pay for it because it was her best dress and they had ruined it.

There was evidence tending to corroborate each of the parties. The matron of the home testified that she was called on early in the morning of Sunday and Grace was sitting in the living room between two officers; that her dress was torn, wrinkled and dirty. At a preliminary hearing at the Harrison street station the defendant Bowers asked the judge to look at the scratches on his face and said they were put there by Miss Moore, and that there were, in fact, light scratches on his face. The police officer said there were no scratches on Bowers' face. The colored night porter at the Southern Hotel said that about one o'clock in the morning he saw a lady standing outside and asked her if he could do something for her; that she asked him if he saw a gentleman going into the hotel with a brown cap on, and he said no; that Grace E. Moore was the lady; that he could not locate a man of that description and told her to go and speak to the house detective, which she did and then left the hotel. The porter by his testimony identified Miss Moore, but said he could not tell how she was dressed or what kind of a hat or dress she had on. The trial was in the middle of December, five months after the occurrence, and it appears that he had not seen her in the meantime. The man at the garage where the car stopped testi-

fied that a man sat on the back seat with a girl and that she had her arm on his shoulder, and a police officer testified that when Bowers stopped the car at the garage there was another man and woman in the back seat and she had her arms around his neck; but neither of these witnesses identified Miss Moore.

When it appeared in evidence that Grace E. Moore lived at the Queen Esther Home for girls there was no error in permitting evidence as to the character of that home to rebut any possible inference that it was for reformation of girls or of a different character from the fact. Miss Moore was permitted to testify that she never previously had sexual intercourse with any man. Previous unchaste character would have been no defense, and under our statute previous chaste character was not an essential to the commission of the crime. A presumption of law was that the previous life and conversation of Miss Moore had been chaste, and it was not necessary for the prosecution to offer any evidence on that subject unless her character should be attacked, but there was no error in admitting the testimony in accordance with the legal presumption. *Bradshaw* v. *People,* 153 Ill. 156.

It will readily be seen that there was such a conflict in the evidence that it was quite essential instructions should be accurate and should not improperly influence the jury in determining questions of fact. Under our statutory limitations the judge can only instruct the jury as to the law, and the law concerning the crime charged in this case is that rape is the carnal knowledge of a female forcibly and against her will. That is the only rule of law with respect to force, which is an essential element where the female is of the age of consent and physically and mentally able to offer resistance. (*Rucker* v. *People,* 224 Ill. 131.) Relating to that subject the court gave the following instruction:

"The court instructs the jury that while the law requires that in order to prove the crime of rape, it must appear

from the evidence that force was used and that the complaining witness resisted or made an outcry, still, if you believe from the evidence that she was paralyzed by fear, she would not be expected to make resistance or outcry; and if the superiority of defendants' strength over hers was very great, she might not be able to make effectual resistance, or if so remote from all human help, that an outcry would be unavailing, none need be made."

There are rules of law, whether created by statute or established by the courts, raising presumptions of fact or affecting the credibility of witnesses or otherwise, such as declaring what shall be presumptive or *prima facie* evidence of a fact, willfully false testimony as to a material fact or the conclusive nature of certain evidence, and these rules may, and should, be given to the jury to aid them in applying the law to the evidence. There is no rule of law, however, as to what particular acts will prove that carnal knowledge of a female was against her will. In order to prove the fact there must be evidence which will show that the act was committed by force and against the will of the female, and if she has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will. In considering the evidence in this case the jury would take into consideration the matters stated in the instruction, such as the fact that Grace E. Moore was five feet two inches in height and weighed 100 pounds; the superiority of the defendants' strength over hers; the place and conditions under which the acts were committed; the fact that she was a working girl; and if the account given by the defendants is true she was an utterly shameless prostitute, making unnecessarily a most indecent exposure of her person and showing a remarkable case of depravity. The jury, taking into consideration all the facts and circumstances, would decide whether they raised a just inference that the acts were against her will, and all these matters were proper for

argument to the jury but not by the court. The instruction was taken from a statement in the opinion in *Austine* v. *People*, 110 Ill. 248, where the modification of instructions was disapproved, but the court proffered a suggestion which would show a good excuse for an inference arising from the conduct of the complaining witness. The modification suggested would not have made the instructions good, and the court erred in giving the instruction in this case.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*