People of the State of Illinois, Plaintiff-Appellee, v. Robert Gabler, Defendant-Appellant.

Gen. No. 68–116.

Second District.

June 20, 1969.

Thomas C. Kelleghan, of Wheaton, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton (Helen C. Kinney and Joseph M. Laraia, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The defendant was tried on a two-count indictment for the crimes of rape and aggravated battery. Count I of the indictment charged Gabler with the offense of rape in that he had sexual intercourse with ". . . Nancy G. Stephenson, a female person, not his wife, by force and against her will. . . ." Count II charged him with the offense of aggravated battery in that he "did strike and hit Nancy G. Stephenson about the face and body with his fists with great force and violence causing great bodily harm. . . ." The jury returned verdicts that found Gabler guilty of the crime of rape and not guilty of the crime of aggravated battery "in the manner and form as charged in the indictment." Judgment was entered on those verdicts and this appeal followed.

Nancy Stephenson testified that she first met Gabler in a tavern called "May's Hideout" at approximately 1:45 p. m. on April 29, 1967. Gabler left the tavern shortly thereafter but returned at 4:00 p. m. and agreed to drive Mrs. Stephenson to the Manor Lounge in North-lake where she was seeking employment as a singer. After a few drinks, they left May's and stopped at a farm where Gabler showed her a horse that he owned. They also stopped at another tavern called "Mr. Dukes" to visit a waitress they knew where they had a few more drinks and played billiards. They left Mr. Dukes and arrived at the Manor Lounge at approximately 9:45 p. m., where Nancy was introduced by the bandleader and had one or two more drinks. They left the Manor so that Mrs. Stephenson could return to May's for a party at 11:00 p. m., but on the way back Gabler drove to a

secluded side road and stopped his car. She told him to start the car and go back to May's but he grabbed her and tried to push her to the seat. She was pushed down but hit the car handle, opened the door and fell to the ground. Gabler fell on top of her, ripped her slacks and slapped her a few times. She was screaming and biting Gabler in her effort to free herself and was able to get up and run about 20 feet from him. Gabler caught her, knocked her to the ground again, and struck her with his fists. Her head fell back and "hit something hard." The next thing she remembered was that Gabler was sitting in his car and she was still on the ground with her clothes "ripped." She got up, went to the car for her purse, and ran down the road where she stopped a police car that happened to be patrolling in the area. The police picked her up but she was unable to recall clearly what happened thereafter except that the police drove down and arrested Gabler at the end of the road.

Gabler testified that he had an argument with his wife and went to May's at around 6:00 p. m. on April 29. He met Nancy Stephenson and after a few drinks left with her. He also testified as to the various stops made by them but added that throughout the evening there was passionate kissing, fondling and other lewd behaviour. When he stopped his car, he continued to kiss her and was on top of her in the car when she "just went nuts" and began to scream, scratch, bite and hit him. He "cracked her back" and she ran from the car. He caught up with her, grabbed her from behind and he fell on top of her. He then noticed, for the first time, that her slacks were ripped. Gabler was asked if he then had intercourse with Nancy Stephenson to which he replied:

> "She kept hitting and scratching, and I hit her back. I never used a closed fist. I hit her with just the back of my hand, or the other way, because she was hitting me and I just hit her back because she was hitting me, more or less.

"And as far as having intercourse with her, I can't remember. I could have, but I'm not sure. I wouldn't say, because I don't know, the way I was feeling."

The police testified that they came upon Mrs. Stephenson at around 11:45 p. m. running down the road, screaming incoherently with her slacks almost completely torn from her body. She told the police officers she had just been beaten and raped by a man down the road and when they drove to the end of the road they found Gabler seated in his car with his pants open. On the way to the hospital, Mrs. Stephenson lost consciousness in the police car. Her face was bruised and bleeding and her eyes were swollen. A subsequent medical examination disclosed that her thighs were bruised and that she had recently engaged in an act of intercourse.

On appeal, the defendant contends that it was incumbent on the State to prove by competent evidence that he had committed a battery upon the person of Nancy Stephenson in order to convict him of rape. He further urges that when the jury found him not guilty of aggravated battery, they, by operation of law, also found him not guilty of battery as a lesser included offense, and that the State therefore was necessarily precluded from proving a necessary element to sustain the conviction of rape.

The crime of rape is defined in the Criminal Code (Ill Rev Stats 1967, c 38, § 11-1(a) and (b)) as follows:

"11-1. Rape.

"(a) A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape. Intercourse by force and against her will includes, but is not limited to, any intercourse which occurs in the following situations:

"(1) Where the female is unconscious; or

124

"(2) Where the female is so mentally deranged or deficient that she cannot give effective consent to intercourse.

"(b) Sexual intercourse occurs when there is any penetration of the female sex organ by the male sex organ."

██ The defendant cites a number of cases from other jurisdictions that appear to hold that a battery is an indispensable element to the crime of rape. People v. Mendoza, 55 Cal App2d 625, 131 P2d 622; Territory v. Silva, 27 Haw 271. There are no Illinois cases on this precise point but we have recently held that a "Battery is neither the same nor is it an includable offense in the crime of attempted rape." People v. Thompson, 87 Ill App2d 426, 430, 230 NE2d 889. We conclude that the statutory definition of rape does not require as one of the elements of the crime a battery.

██ ██ Count II of the indictment charged Gabler with aggravated battery in that he struck Nancy Stephenson "about the face and body" with his fists, an offense entirely separate from the charge of rape. The defendant argued to the jury, correctly, that in order to prove aggravated battery it was necessary to establish that the girl suffered "great bodily harm." It was not necessary to show either that Gabler struck the girl or used any particular force if she was unconscious in order to prove the rape. Therefore, the verdict that Gabler was not guilty of aggravated battery "as charged in the indictment" was not inconsistent with the verdict that he was guilty of rape.

██ The next point urged by the defendant is that he was placed in double jeopardy by the method of prosecution. This argument also appears to be based on the contention that the same proof was necessary to convict Gabler of either charge. We repeat that these were separate offenses based on separate acts and did not necessarily have to be tried together. In any event,

they were prosecuted simultaneously and the concept of double jeopardy has application only in cases of subsequent prosecutions.

■ The defendant also argues that the evidence was insufficient to show that he had intercourse with the prosecutrix by force and against her will. Although he never admits that intercourse did in fact occur, he contends that if it did occur it was with the consent of Mrs. Stephenson. The testimony of the defendant himself overwhelmingly refutes any possibility of consent. He did not testify that she had agreed to intercourse but, on the contrary, that ". . . She never said okay to anything." His description of her behavior indicates the absolute antithesis of consent. She bit, scratched, kicked and hit him and tried, futilely, to run away. Her slacks were torn off, she screamed "Help!" and only succumbed after she lost consciousness. If this conduct is indicative of consent, we cannot conceive of what proof is necessary to show resistance.

■ ■ For these same reasons, the trial court properly denied any testimony relative to the prosecutrix' reputation for chastity. The reputation for chastity in a rape case is only material where the defense is consent. People v. Cox, 383 Ill 617, 622, 50 NE2d 758. Although counsel for the defendant in his opening argument and before us has raised the question of consent, it was not raised as a defense during the trial. At the time of his arrest, the defendant denied intercourse had occurred and at the trial he could not remember. Under the circumstances, the prosecutrix' reputation for chastity was not material.

For the reasons given, the verdict and judgment of the trial court was proper and should be affirmed.

Judgment affirmed.

MORAN, P. J. and DAVIS, J., concur.