(No. 42711.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
CHARLES HEARD *et al.,* Appellants.

*Opinion filed May 21, 1971.*

CORNELIUS E. TOOLE, of Chicago, appointed by the court, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and JOHN P. O'ROURKE, Special Prosecutor, of Danville, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Peter Collins, Charles Heard, and Guy Martin were indicted by the grand jury of Vermilion County upon charges of rape, deviate sexual assault, aggravated battery, conspiracy to commit rape, armed robbery, and armed violence. All three originally entered pleas of not guilty to all the

counts, but Collins later pleaded guilty to the charge of rape, and the other counts of the indictment were dismissed as to him. Heard and Martin (hereinafter defendants) were found guilty by a jury, and after a hearing in aggravation and mitigation, each was sentenced to imprisonment on the rape charge for not less than 25 nor more than 50 years. A constitutional claim is asserted on review, and they have appealed directly to this court. 43 Ill.2d R.. 603.

The defendants were first tried together in July of 1969, but a mistrial was ordered when one of the jurors became ill during deliberations. A second joint trial, begun on August 20, 1969, resulted in the verdict and judgment now before us. On appeal, the defendants assert three claims: (1) that their challenge to the jury array should have been allowed; (2) that errors were made by the trial court in giving and refusing to give certain instructions; and (3) that the sentences were excessive.

The evidence need be summarized only to the extent necessary for consideration of these contentions. The record shows that at some time between the hours of 3:00 and 5:00 A.M. on the morning of May 17, 1969, when Mrs. Linda Moore, Mrs. Judy Pittman, Larry Lowe and James Evans were leaving Kags Bar-B-Q in the city of Danville, they were confronted by three partially-masked, male Negroes, one of whom carried a shotgun. Mrs. Pittman managed to lock the door of the car and ultimately escaped by jumping into a passing car. Lowe was struck on the back of the head with a shotgun, and Lowe, Evans and Mrs. Moore were forced at gunpoint across the street to the porch of an abandoned house. On the way, Evans was also struck with the shotgun on the side of the head. Attempts to enter the abandoned house were unsuccessful. Both Evans and Lowe were robbed. After Mrs. Pittman had escaped, one of the assailants grabbed Mrs. Moore, saying: "This one will do." Evans advanced, and the assailant carrying the gun fired it into the porch floor. Evans and Lowe were

warned not to follow, and Mrs. Moore was dragged down the porch stairs, across the walk and down the street. Her clothes were torn off from the waist down, and she was thrown on the ground. They then covered her face and "took turns" having sexual intercourse with her. They also forced her to engage in deviate sexual acts. None of the victims were able to identify any of their assailants.

The State introduced five witnesses who testified concerning the defendants' connection with the crimes. Peter Collins, who had already entered a guilty plea to the rape charge, testified that Heard first approached him with a plan to rob the two white girls and two white boys at Kags, and that after he agreed, Heard went and got a shotgun. They then encountered Martin who agreed to the plan after Heard had said he would like to have intercourse with one of the girls. Collins stated the details of the crimes: Heard carried the shotgun with him during the entire incident, struck at least one of the male victims with the gun, and discharged it into the porch floor. Heard threw Mrs. Moore onto the ground and then forced her to perform a deviate sexual act with him. Martin was present at the time. Collins admitted that he had raped Mrs. Moore, but denied that he forced her to perform a deviate sexual act with him. Finally, he stated that after the entire incident the three of them gathered together in Carver Park where they encountered four other youths.

Cleo Westland, James Coe, Paul Hurt and Roland Lewis each testified that he saw the two defendants and Collins in Carver Park early on the morning of May 17, and that the defendant Heard said that "some people had got raped down at Kag's." Westland, Coe and Hurt, however, had testified at the first trial that they did not hear Martin or Heard say anything. A note written by the defendant Heard to the witness Hurt, dated July 3, 1969, in which Heard asked Hurt to change his statements to the police and say that "me and Guy wasn't there," was received in evidence.

In this case, as in *People* v. *Cross* (1968), 40 Ill.2d 85, and *People* v. *Butler* (1970), 46 Ill.2d 162, the contention that there was purposeful discrimination on the ground of race in the selection of jurors is based upon the assertion that the racial composition of the array of jurors and of the petit jury did not correspond with what was said to be the racial composition of the county. It was asserted that 11% of the inhabitants of Vermilion County were Negroes. The precise number of Negroes on the array of jurors can not be determined with certainty, but it is clear that there was one Negro on the petit jury at each of the trials in this case. There is included in this record a full description by the clerk of the jury commissioners of the method employed in the selection of jurors. It is not claimed that there was discrimination at any of the steps in the process of jury selection described by the witness. In our opinion the record fails to disclose purposeful discrimination in the selection of the jurors. See *Swain* v. *Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824.

The defendants next contend that the trial court erred in giving and refusing to give certain instructions. They argue that several of the People's instructions were unnecessary, repetitious and confusing. The State submitted a total of 50 instructions. Fifteen were refused (Nos. 20 and 22-35). Counsel for the defendants did not object to Nos. 1-10 (general), 12-19 (statutory definitions and elements of the crimes charged), 36 (issues in armed robbery charge), 44-49 (verdicts and accomplice testimony) and 50 (enumeration of counts in indictment). Therefore, at issue here are only People's instructions Nos. 11, 21 and 37-43.

People's instruction No. 11 was derived from the Illinois Pattern Instructions in Criminal Cases (IPI-Criminal 6.03). It was objected to during the instructions conference on the grounds that it was argumentative, incomplete and an incorrect statement of law. This objection was clearly without basis, and the instruction was properly given. Peo-

ple's instruction No. 21 (IPI-Criminal 6.04) was objected to as being repetitious of No. 11. No. 11 defined the crime of conspiracy, and No. 21 stated the issues in a conspiracy charge. We do not think that it was error to give both. See generally IPI-Criminal 27.03 (Sample Set of Instructions).

People's instructions Nos. 36-38 were patterned after IPI-Criminal 14.02 and stated the issues in the armed robbery charges. Each instruction named a different victim and different stolen property. Counsel for the defendants failed to object to No. 36, but did object to Nos. 37 and 38 on the ground that they were repetitious of No. 36. We find that these three instructions were properly given.

People's instructions Nos. 39 and 40 stated the issues in the two armed violence counts—No. 39 covering rape while armed and No. 40 deviate sexual assault while armed. They were also objected to as repetitious. In our opinion they were properly given.

People's instructions Nos. 41-43, modifications of IPI-Criminal 11.08 and 11.09, discuss the issues in the six aggravated battery counts. Each instruction covers the issues in two counts of the indictment, and along with People's instructions Nos. 17 (definition of battery) and 18 (definition of aggravated battery), they constitute all of the instructions on the six aggravated battery counts. Again we find that these three instructions, which related to different offenses and victims, were properly given.

The defendants also argue that the trial court erred in refusing to give defendants' instruction No. 10, which dealt with the credibility of witnesses. Instead, the court gave People's instruction No. 2, IPI-Criminal 1.02, which reads in pertinent part: "You are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reason-

ableness of his testimony considered in the light of all the evidence in the case." In our opinion this instruction adequately covered the subject. *People* v. *Smith* (1971), 47 Ill.2d 528.

Finally, the defendants contend that the sentences were excessive. They emphasize that each of the defendants were only 18 years of age at the time of sentencing, and that "the record fails to reveal factors that either defendant was not rehabilitative." We are not persuaded, however, that this is an appropriate case for the exercise of this court's authority to reduce the punishment imposed by the trial court. Each of the defendants had, on April 21, 1969, pleaded guilty to an unrelated burglary. The facts of the occurrence, even as summarized in this opinion, show an extraordinarily brutal, premeditated crime.

The judgment of the circuit court of Vermilion County is affirmed.

*Judgment affirmed.*