THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHANNON STEPHENS, Defendant-Appellant.

(No. 57222;

First District (2nd Division)—April 2, 1974.

James J. Doherty, Public Defender, of Chicago (William C. North and John T. Moran, Jr., Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and William K. Hedrick, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

After a jury trial, defendant was found guilty of rape and deviate sexual assault and sentenced concurrently to a term of 25 to 50 years on each conviction. Defendant appeals and alleges he was denied a fair trial in that (1) the prosecution was permitted to impeach defendant by the use of an oral statement not referred to in response to a discovery motion; (2) that prejudicial testimony, indicating that the victim's family moved because of fear of defendant, was admitted into evidence; (3) that the prosecution improperly suggested that the defendant committed crimes unrelated to the one at bar; (4) that evidence was erroneously adduced to establish the prior virginity of the victim; and (5) that during closing argument, the prosecutor improperly argued the absence of alibi witnesses, accused defense counsel of "chicanery," and attacked defendant with an inflammatory characterization. Alternatively, defendant raises contentions regarding the imposition of an excessive sentence and that the punishment for deviate sexual assault exceeded the statutory maximum.

The evidence reveals that at 7 A.M. on October 6, 1970, the complaining witness, a 16-year-old student, left her 16th-floor apartment in a Chicago Housing Authority project to attend high school. While alighting from the elevator on the first floor, she encountered the defendant, Shannon Stephens, who forcibly shoved her back into the elevator, and, by pushing the stop button, caused the elevator to be immobilized between floors. The assailant then told the victim to disrobe. While removing her footwear, the victim found an opportunity to hit defendant on the head with the heel of her shoe. The assailant grabbed and threatened complainant, and then forcibly raped her and subjected her to an act of anal intercourse.

After the attack, which lasted for approximately 30 minutes under two bright overhead lights, the assailant returned the elevator to the first floor where he departed. The victim made her way back to her apartment and told her mother of the attack. She appeared in disarray, dirty, crying, and her undergarments were saturated with blood. After a douche, she was examined at Michael Reese Hospital where it was determined that she suffered lacerations of the hymen and perineum.

Five days later complainant picked defendant from a group of photographs, an arrest warrant was issued, and within a few days defendant was apprehended and identified. At the time of arrest, it was observed that defendant was suffering from a recent laceration on the head.

Defendant, his mother, and his sister interposed an alibi defense.

Defendant's initial contention is that the court erroneously permitted

the prosecution to impeach defendant by an oral statement not referred to in the State's answer to defendant's discovery motion. In response to defendant's discovery request for "[a] list of witnesses to any oral statement that the defendant may have made," the State answered "[n]o statements." At trial, during the State's case in chief, the victim testified that she hit her assailant on the head with a shoe; Officers Jones and McCall also testified that they observed a fresh cranial wound on defendant at the time of arrest. Defendant testified and on cross-examination denied having a head injury at the time in question and further denied ever relating to police the circumstances of such injury. In rebuttal, Officer McCall testified that in response to a question asked at the time of arrest, defendant stated his head wound had been caused by a bottle thrown from the upper floor of the "project."

This rebuttal testimony, defendant contends, was inadmissible owing to the failure of the State to include it in the discovery answer. In support of this contention, defendant relies on *People v. Mwathery,* 103 Ill. App.2d 114, 243 N.E.2d 429, wherein the court stated it was error for the State to fail to honor an agreement not to comment on a statement made by a co-defendant.

■■ We initially note that at the time the State filed its answer to the discovery motion, January 22, 1971, it was under no obligation to furnish defendant with information regarding admissions or statements. (See *People v. Hall,* 83 Ill.App.2d 402, 227 N.E.2d 773; Ill. Rev. Stat. 1969, ch. 38, par. 114—10.) Furthermore, the *Mwathery* case is inapposite in that the present record reveals the absence of any agreement to withhold statements. Therefore, no error was committed by the introduction of the impeaching statement.

We also reject defendant's alternative argument that the trial court's refusal on the day of trial, November 30, 1971, to grant a continuance to enable defendant to file a new discovery motion under Supreme Court Rule 412(a)(ii) (effective October 1, 1971) was prejudicial.[1] Although defendant had 2 months in which to file an amended or supplementary

---

[1] Ill. Rev. Stat. 1971, ch. 110A, par. 412 provides:
    "412. (Supreme Conurt Rule 412). Disclosure to Accused:
      (a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:
            \*   \*   \*
      (ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgement of such statements;   \*   \*   \*."
             \*   \*   \*

motion to produce under the new Supreme Court Rule, he failed to avail himself of the opportunity. Additionally, the trial judge assured defense counsel that a continuance would be granted after voir dire examination if defendant requested the same to study discovery matters; again, defendant failed to avail himself of the opportunity. Under these circumstances, we conclude that not only was the trial judge acting within his discretional authority in the first instance (*People v. Davis*, 45 Ill.2d 514, 261 N.E.2d 314), but that defendant waived any objection by his failure to take advantage of the offered mid-trial continuance.

Defendant next contends that the trial court erred in admitting certain testimony. First, defendant complains of the following colloquy between Mrs. Reynolds, the mother of complainant, and the prosecutor on re-direct examination:

> "PROSECUTOR: One question, Mrs. Reynolds. Did you move from that building since that time?
> MRS. REYNOLDS: Yes, I have.
> DEFENSE COUNSEL: Objection.
> MRS. REYNOLDS: I had to, because she was afraid.
> PROSECUTOR: Nothing further."

■■ Citing *People v. Herbert*, 361 Ill. 64, 196 N.E. 821, defendant argues that the inference to be drawn from the above colloquy is that the complaining witness was in fear for her safety by reason of her activity in prosecuting the defendant. In *Herbert*, the court held it prejudicial error to admit testimony that a police guard was placed around the house of the prosecuting witness just prior to trial in that it tended to create in the mind of the jury the impression that the witness was intimidated with threats of violence by the defendant. In the present case, aside from the consideration that the witness' answer was non-responsive and defense counsel failed to obtain a ruling on his objection, we think the testimony of Mrs. Reynolds sustains multiple inferences unrelated to a specific fear of defendant. Complainant's emotional reaction could emanate from an apprehensiveness of the neighborhood in general, or more particularly, from a fear of residing in a building where the use of elevators is a necessity. Therefore, the *Herbert* case is not controlling and we hold defendant's contention to be without merit.

Defendant next assigns as error the following testimony of Officer Jones elicited on redirect examination which, defendant argues, suggests that he committed other crimes unrelated to the one for which he was tried:

> "PROSECUTOR: Relative to this case, the case only, did any person view the line-up held on the 13th of October?
> OFFICER JONES: Repeat that please?

Q: Be sure you understand this question. As to this case, this case only, this being the charge of Shannon Stephens for sexual assault on Miss Reynolds, did any person from this case, right here as we are talking about, view the line-up that was held on the 13th of October?

DEFENSE COUNSEL: Object.

THE COURT: Overruled.

Q.: Do you understand the question?

A.: No. I don't.

Q.: You were asked by Mr. Murphy on cross examination, whether or not a line-up was held—

A.: Um-hum.

Q.: (Continuing)—on the 13th of October, which Shannon Stephens stood in, is that right? And you said * * * [complainant] did not view that line-up.

A.: That's correct.

Q.: Did anybody, for the purpose of identification, anybody involved in this case, view that line-up?

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

Q.: Do you understand that question?

A.: Other than the investigation officers?

Q.: No witnesses?

A.: No witnesses."

To avoid misreading the purpose of the prosecutorial questioning, it is appropriate to note the context in which they were asked. Prior to trial, during defendant's motion to suppress, it was revealed that the victim, after having made a photographic identification of the defendant, was requested to come down to the police station for purposes of viewing a lineup. Upon arriving at the police station, complainant inadvertently walked into the wrong room, saw defendant with several police officers, and stated: "That's him. That's him." Because of this contretemp, the intended lineup was cancelled. However, defendant did participate in one or more lineups which were viewed by the victims of two other rapes.[2] The trial judge, in sustaining defendant's motion to suppress the police station identification, ruled that the police station confrontation between the victim and defendant would not be allowed to "be brought

---

[2] The testimony was elicited from an investigating officer by defense counsel. The witness and counsel were admonished by the court to confine the testimony to the present case.

into the trial unless it is brought in by the defense." The trial court's ruling proved prophetic. At trial, during the cross-examination of Officer Jones, defense counsel brought out the inadvertent confrontation and elicited that defendant had participated in a lineup, but that complainant did not view it. The prosecutor then requested a side-bar conference, and inquired if he might explain away the unfavorable inference—that other potential witnesses in this case had viewed defendant but could not identify him. The complained-of testimony, above-quoted, was then elicited and was followed by testimony indicating that it would have been a futile act to have complainant view the lineup.

Placed in context, it is clear that defense counsel, apparently for tactical reasons, initiated the question of prior lineups. If a defendant procures, invites or acquiesces in the admission of evidence, even though it be improper, he cannot complain. (*People v. Burage*, 23 Ill.2d 280, 178 N.E.2d 389.) It was therefore proper for the State to rebut the unfavorable inference arising from testimony elicited by defense counsel. Moreover, viewing the complained-of testimony in a vacuum, we are not persuaded that it falls within the purview of the rule prohibiting the admission of evidence concerning the commission of other crimes by the accused. See *People v. Coleman*, 17 Ill.App.3d 421; 308 N.E.2d 364; *People v. Jackson*, 103 Ill.App.2d 209, 243 N.E.2d 551.

It is also contended by defendant that testimony indicating that complainant was a virgin before she was raped was prejudicial and improperly admitted. The examining physician, Dr. Streeter, in response to a question concerning the medical history of the complaining witness, stated: "The patient denied any previous sexual exposure." Defendant refers us to *People v. Gabler*, 111 Ill.App.2d 121, 249 N.E.2d 340, where the court, after stating the general rule that reputation for chastity in a rape case is only material where the defense is consent, held that the factual posture of that case precluded any question of consent, and affirmed the ruling of the trial court denying the admission of defense testimony relative to the complainant's reputation for chastity. As applied to the present case, defendant reasons that since the defense was mistaken identity rather than consent, testimony regarding complainant's "lack of previous sexual exposure" is necessarily immaterial. We disagree.

■■ Want of consent on the part of the prosecutrix is of the essence of the crime of forcible rape and must be proved by the prosecution beyond a reasonable doubt before there can be a legal conviction of that crime. (*People v. Fryman*, 4 Ill.2d 224, 122 N.E.2d 573.) Inasmuch as want of consent is a substantive issue in the State's case, the prior

chastity of the complaining witness is both material (*Stevens v. People,* 158 Ill. 111, 41 N.E. 856) and relevant. Gard, Illinois Evidence Manual (1963), Rule 94(c) and cases cited thereunder.

Nor are we of the opinion, as defendant argues, that evidence of prior chastity, elicited during the State's case in chief, becomes immaterial when the defense is not consent but mistaken identification. It is true that prior chastity becomes immaterial when defendant, in its case, interposes the defense of mistaken identity; however, the State is not obligated to anticipate the avenue of defense and limit its proofs accordingly, even though defendant admits or stipulates to the existence of certain facts. (*People v. Botulinski,* 392 Ill. 212, 64 N.E.2d 486.) As stated in *People v. Scheck,* 356 Ill. 56, 62, 190 N.E. 108:

> "It has never been held that the State is barred from proving a fact because the defendant offers to admit it, but, on the contrary, the rule is that when a trial is upon a plea of not guilty the State is permitted to go ahead and introduce its full proof of the crime charged in the indictment. [Citation.]

■■■ Given the materiality and relevancy of prior chastity to want of consent in a rape prosecution, we also recognize that, under the statute, it is not necessary for the State to offer any evidence on that subject, and, moreover, that the complaining witness is presumed, in law, to be of chaste character. It is, however, not error to enter proofs in accordance with the legal presumption of chastity. (*People v. Eccarius,* 305 Ill. 62, 136 N.E. 651; *People v. Nieglos,* 306 Ill. 53, 137 N.E. 400.) We further recognize that absent an attack on the character of the complaining witness, the introduction into evidence of prior chastity may, under various circumstances, be unduly inflammatory and prejudicial. Therefore, its admissibility should be viewed with considerable caution and circumspection.

In the present case, we note that prior chastity of complainant was elicited only in a medical context, that complainant was not questioned about prior sexual contact, that the language used was not such as to exploit the sensibilities of the jury, and that the subject matter was not unduly dwelt upon. We note further that, in view of the doctor's testimony as to lacerations of the hymen, the statement in the medical history could be regarded as merely cumulative. Under these circumstances, we think its use was neither unreasonable nor prejudicial. *People v. Eccarius, supra; People v. Nieglos, supra; State v. Aveen,* 284 Minn. 194, 169 N.W.2d 749; Annot., 35 A.L.R.3d 1447.

Defendant next contends that the prosecutor's closing argument was, in three particulars, prejudicial. Defendant first assigns as error the following comment concerning defendant's failure to call an alibi witness:

"The most interesting thing about the witnesses for the defense are those that were not called. First, we have Ronald, the boy friend of the mother. He was not called. He is in New York. So what? This is a rape case. If he could add anything, you get him in from New York."

■■ The general rule is that it is improper for the prosecution to comment on defendant's failure to present witnesses when such witnesses are equally accessible to both parties. (*People v. Rubin*, 366 Ill. 195, 7 N.E.2d 890, *People v. Munday*, 280 Ill. 32, 117 N.E. 286.) However, where the defendant injects into the case his activities with potential witnesses during a particular period of time ostensibly for the purpose of establishing an alibi for the time of the commission of the crime charged, his failure to produce such witnesses is a proper subject of comment on the part of the State. (*People v. Swift*, 319 Ill. 359, 150 N.E. 263.) Within the exception to the general rule, the prosecutor's comment must be legitimate in scope (see *People v. Williams*, 40 Ill.2d 522, 240 N.E.2d 645), and not misleading (see *People v. Munday, supra*) or unfair (see *People v. Smith*, 105 Ill.App.2d 8, 245 N.E.2d 23.)

■■ In the instant case, defendant, his mother, and his sister testified that at the time of the assault, they were at the apartment of defendant's mother with Ronald. Therefore, not only did defendant interject the additional alibi witness into the case, but we are also of the opinion that the prosecutorial allusion to Ronald was neither misleading or unfair. The prosecutor's comment was proper and its subject matter was a circumstance entitled to some weight in the minds of the jury. *People v. Arnold*, 12 Ill.App.3d 826, 299 N.E.2d 446; *People v. Tolefree*, 14 Ill. App.3d 754, 303 N.E.2d 555; see also *People v. Nilsson*, 44 Ill.2d 244, 255 N.E.2d 432.

Next we are referred to the following passage in which the prosecutor alludes to the "chicanery" of defense counsel:

"For him [defendant's lawyer] to suggest he is some young, inexperienced fellow isn't true. You can see during the course of his closing argument he used everything known to any Defense lawyer to, by chicanery, tried to get his defendant off."

Initially, we note that the reference made to defense counsel's tactics was not entirely unprovoked. During argument defense counsel apparently sought to court the jury by projecting a self-deprecating image, explicitly contrasting his own youth that still had a "hopeful future" with the excellent professional skills of the two prosecutors. Considered in this context, the prosecutor's remark, although inappropriate and better left unsaid, was not entirely unwarranted. Moreover, defendant's attorney failed to object when the comment in question was made. Where there

is no objection, errors stemming from the prosecutor's remark to the jury are deemed waived unless they are so prejudicial that the reviewing court must consider whether they affected the outcome of the case. (*People v. Hampton,* 44 Ill.2d 41, 253 N.E.2d 385.) Viewing the alleged error in context, we do not feel that it was of a nature so substantial as to require this court to assess its possible effect despite the absence of objection. *People v. Pearson,* 52 Ill.2d 260, 287 N.E.2d 715.

■■ It is lastly argued that the prosecutor's reference to defendant as an "animal" constituted reversible error. We note that an objection to this reference was sustained, the prosecutor promptly apologized, and the jury was informed, by general instruction, to disregard the comments of the attorneys not based on the evidence. Under these circumstances, although the unrepeated reference undoubtedly skirted the bounds of propriety in legal argument, it did not constitute reversible error. (*People v. Mackey,* 30 Ill.2d 190, 195 N.E.2d 636; *People v. Nickelson,* 105 Ill. App.2d 138, 245 N.E.2d 79.) In conclusion, we believe that the alleged errors, either individually or collectively, did not deny defendant a fair trial.

■■ Defendant finally contends that his concurrent sentences of 25 to 50 years for rape and deviate sexual assault were excessive. In support thereof, defendant argues that the prosecutor's improper conduct contributed to the sentences imposed by the trial judge; that in light of defendant's youth (21 years old at the time of trial) and the absence of any prior convictions, the sentences imposed discourage any hopes of rehabilitation; and that defendant's sentence for deviate sexual assault was in excess of the statutory maximum at the time of sentencing. (Ill. Rev. Stat. 1971, ch. 38, par. 11—3.) The State agrees with defendant's last point and requests this court to reduce the 25 to 50 years sentence for deviate sexual assault to a term of not less than 4 nor more than 14 years in accordance with Ill. Rev. Stat. 1971, ch. 38, par. 11—3. Accordingly, the sentence for deviate sexual assault is so modified.

In light of the modified sentence for deviate sexual assault and the 25 to 50 year sentence for rape, we turn next to defendant's assertion that the following comment made by the prosecutor to the judge during a side-bar conference was inflammatory and necessarily contributed to the excessive sentence: "I would indicate at this time that Shannon Stephens was viewed by the victims of two other rapes, and both of them identified the defendant. These are separate cases. One has refused to testify." As earlier mentioned, the statement was made at a time when the defense had interjected into the case the notion that defendant had participated in a lineup but that the complaining witness did not view it. In support of its position, defendant cites *People v. Brown,* 3 Ill.App.3d 1022, 279

N.E.2d 765, and *People v. Riley,* 376 Ill. 364, 33 N.E.2d 872. In *Brown,* the court reversed the judgment of conviction for murder when the prosecutor, during closing argument before a jury, linked the defendant to an unrelated crime of robbery. *Brown* is inapposite here in that the present statement was made outside the presence of the jury, and therefore, in no way contributed to defendant's judgment of conviction.

In *Riley,* after defendants had pleaded guilty to murder, the prosecutor, at the pre-sentencing hearing, read into the record defendant's previous arrests which were not followed by convictions. Defendant refers us to pages 367-68 where the Illinois Supreme Court, in admonishing the prosecutor's misconduct, stated:

> "It was unnecessary and unfair on the part of the prosecutor to include these immaterial matters and an error on his part which might very easily bring about a reversal of the judgment in some cases. On a hearing of this kind the prosecutor is under both a legal and moral duty not to offer anything for the consideration of the trial judge which may be of doubtful competency and materiality."

However, as not pointed out by defendant, the court stated that the true inquiry was whether the defendants had been prejudiced by the error, and in affirming the sentence, stated that "[i]t would be a reflection on the fairness and judgment of the trial court to assume * * * [that the evidence of inadmissible prior arrests] could have tipped the scales against these defendants or seriously impaired their standing before him." (376 Ill. at 373.) The proposition for which defendant's case stands is that absent an affirmative showing to the contrary, the trial judge is presumed to disregard any incompetent evidence when determining the degree of punishment. *People v. Fuca,* 43 Ill.2d 182, 251 N.E.2d 239; *People v. Drewniak,* 105 Ill.App.2d 37, 245 N.E.2d 102.

■■ As applied to the present case, the record reveals that the prosecutor made no reference to the other lineup identifications during the hearing on aggravation and mitigation, nor did the trial judge make any statement from which it could be inferred that the sentence was influenced by the unrelated lineup identifications.[3] Under these circumstances, defendant's assertion is mere conjecture finding no support in the record and, therefore, fails to overcome the presumption.

■■ Based upon defendant's youth and lack of prior conviction, defendant questions the severity of the sentence, arguing that the 25 to 50 year sentence clearly discourages any hopes of rehabilitation. Where it

---

[3] In fact, when the assistant State's Attorney made the remark at the side-bar conference, the trial court reprimanded him and the court manifested its dismay.

is contended that the punishment imposed in a particular case is excessive, though within the limits prescribed by the legislature, a reviewing court should not disturb the sentence unless it clearly appears that the penalty constitutes a great departure from the fundamental spirit and purpose of the law. (*People v. Smtih,* 14 Ill.2d 95, 150 N.E.2d 815.) Although reviewing courts have the power to reduce sentences imposed by trial courts where circumstances warrant, such authority should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals. (*People v. Taylor,* 33 Ill.2d 417, 211 N.E.2d 673.) Except as previously modified, the nature and the circumstances of the crimes perpetrated upon this innocent young school girl demonstrate to this court that no useful purpose would be served by disturbing the sentences imposed by the trial court. *People v. Heard,* 48 Ill.2d 356, 270 N.E.2d 18; *People v. Johnson,* 8 Ill.App.3d 457, 289 N.E.2d 722.

Accordingly, the judgments of conviction are affirmed; the sentence for rape is affirmed; and the sentence for deviate sexual assault is modified.

Judgments affirmed as modified.

HAYES, P. J., and LEIGHTON, J., concur.