THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GUY MARTIN (Impleaded), Defendant-Appellant.

Fourth District   No. 12863

Opinion filed May 13, 1976.

Howarth & Howarth, of Springfield, for appellant.

Richard J. Doyle, State's Attorney, of Danville (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

After jury trial before the Circuit Court of Vermilion County, defendant Guy Martin and Charles Heard were convicted of the offense of rape. Defendant Martin was sentenced to 25 to 50 years' imprisonment. Upon appeal to the Supreme Court both sentence and conviction were affirmed in *People v. Heard*, 48 Ill. 2d 356, 270 N.E.2d 18. Subsequently defendant Martin filed the instant petition for post-conviction relief pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1973, ch. 38, par. 122—1 *et seq.*). Upon motion of the State, that petition was dismissed without an evidentiary hearing. Defendant appeals.

The petition is voluminous, containing 25 pages in its body and is supported by more than 150 pages of exhibits including the abstract of the record of the trial. The post-conviction proceeding is a remedy for a violation of substantial constitutional rights of an accused which results in his "conviction" (Ill. Rev. Stat. 1973, ch. 38, par. 122—1). The basic contention of the petition here is that defendant was denied due process of law both in the trial court and on appeal. The People argue that

defendant's claim of deprivation of constitutional rights at trial is barred by *res judicata* or waiver because of the affirmance of his conviction and sentence on direct appeal. Before discussing this question, however, we consider first whether the petition is sufficient to set forth a deprivation of any of defendant's constitutional rights at trial.

The specific claims of defendant require consideration in the context of the evidence as set forth in the abstract of the record incorporated in the petition. Linda Moore, Judy Pittman and Larry Lowe testified for the prosecution. The substance of their combined testimony was that they, together with James Evans, were leaving Kags Bar-B-Q in Danville between 3 and 5 a.m. on the morning of May 17, 1969. Three partially-masked male Negroes, one of whom carried a shotgun, confronted them. Lowe was struck on the back of the head and Evans on the side of the head with the gun. Mrs. Pittman managed to get into an automobile where she locked the doors. One of the three black assailants forced her to leave the car but as she did, she was able to get into a passing car and escape.

The other three victims were forced across the street to the porch of an abandoned house. Attempts to enter the house were unsuccessful. Both the male victims were robbed. One of the assailants grabbed Mrs. Moore saying "This one will do." Evans attempted to help her, but the assailant carrying the gun fired it into the porch floor. Evans and Lowe were warned not to follow as Mrs. Moore was dragged down the porch stairs, across the walk and down an alley. Her clothes were torn off from the waist down, and she was thrown on the ground. Her face was covered, and she stated that three black men took turns having sexual intercourse with her and she was forced to engage in deviate sexual acts. None of the victims were able to identify any of the assailants.

Much of the prosecution's case depended upon the testimony of the admitted accomplice, Peter Collins. He testified that he and Charles Heard were outside Kags Restaurant when Heard suggested that they rob the four victims whom they had seen entering the restaurant. After Collins agreed, Heard went away and returned with a gun. Defendant was sitting in a car nearby and they walked up to him. At that time Heard said that he would like to have sexual intercourse with one of the girls. Defendant made no response. The occurrence related by the victims happened about 15 minutes later. Collins substantiated the testimony of the victims as to what happened at the house.

Collins said that he and Heard then dragged the girl down the alley and in the meantime defendant was "supposed" to be with the girl at the car. After Collins and Heard had engaged in the acts related by Linda Moore, Collins heard someone coming through the bushes. He then ran to the end of the alley to pick up Mrs. Moore's purse which had been left there. He

then ran back down the alley where she was and at the time saw defendant coming out of the bushes. He then ran to Carver Park where he saw Roland Lewis, Mac Coe, Cleo Westland and Paul Hurt. Collins stated that Heard followed him into the park in about five minutes and defendant arrived there about five minutes after Heard. Collins admitted that he disliked defendant because defendant had arranged a date between a male friend of defendant's and a girl friend of Collins'.

Lewis, Coe, Westland and Hurt were younger boys, some of whom had charges pending against them at the time of the trial. They all testified that Heard, Collins and defendant were in the park at the time in question and that Heard said something about a rape at Kags' and some said he admitted participation. None said defendant had made any admission. A previous trial of the case had resulted in a mistrial, and three of these witnesses had testified then that they did not hear either defendant or Heard say anything in the park.

Defendant testified that he left Danville earlier that day and was at his home in Springfield that evening. His testimony was substantiated by his father who was with him in Springfield that evening. Several others stated that they saw him in Springfield on the following day.

Defendant was represented throughout the trial by the Vermilion County public defender. The defendant's affidavit attached to the petition states that before trial he asked counsel to ask for a severance but counsel did not do so. He maintains that the failure to obtain a severance and to obtain separate counsel violated his constitutional rights particularly in view of the introduction into evidence of a letter written by his codefendant Heard while the latter was in jail. This letter was written to Paul Hurt, one of the boys who testified to seeing Heard, Collins and defendant in the park. It had apparently been intercepted.

The letter was offered in evidence in the case in chief. It was not admitted then but was reoffered and admitted, over defense objection, in rebuttal. The letter asked Hurt to change his testimony to say that defendant and Heard were not in the park that night. Defense counsel's objection was that since Heard had admitted in his testimony that he had made the statements in the letter, it was not an impeaching document. The People countered that it was an admission of Heard who was a defendant and therefore admissible as such and not merely for impeachment.

The jury could infer from the letter that Heard was saying that he and defendant were in fact present at the park on the early morning in question and asking Hurt to lie about this. As to defendant, this document was hearsay and quite prejudicial. Counsel should have objected to its admission on this ground and if it was admitted, requested that its consideration be limited to Heard.

Defendant argues that admission of this letter violated his right to confront the witnesses against himself. In *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, one of two jointly tried defendants had made a confession which stated that he had an accomplice but did not name that individual. It was admitted into evidence with an instruction that it be considered by the jury only as to the confessing defendant. That defendant did not testify. The Court held the admission of the confession to violate the other defendant's right of confrontation because the document implicated him and he had no opportunity to cross-examine the confessing defendant. The limiting instruction was held to be insufficient to remove from the minds of the jurors the prejudice arising from the implication of guilt.

The prosecution distinguishes the instant case from *Bruton* first in that there the document admitted was a confession whereas here it is merely a letter with implications of guilt. In *Bruton*, however, the nonconfessing defendant was not named and the connection to him was by implication. They also argue that here Heard took the stand. His testimony is not part of the abstract attached to the petition. Defendant has, without objection, placed excerpts from Heard's testimony at trial in the supplemental record on file. These excerpts indicate that Heard was cross-examined about this document by the prosecution without any objection by defense counsel as to its prejudice to defendant. During the course of this cross-examination Heard did say that he meant to tell Hurt to tell the truth. This testimony was not emphatic, however, and came late in the cross-examination. Since Heard was also a client of defense counsel, he could not vigorously cross-examine Heard or discredit him in any way.

There is no allegation as to when defense counsel learned of the existence of the letter. When he did he should then have called to the attention of the court the fact that defendant would have no effective way to cross-examine Heard, the declarant in the letter, unless separate counsel were appointed for defendant and Heard. If defendant's counsel became aware of the letter before trial, he should have moved for a severance. He should also have objected to the admission of the letter on the grounds that it was prejudicial hearsay as to his client. If the document was admitted, nevertheless, he should have requested that its consideration be limited to Heard.

■■ "In order to warrant a reversal because of incompetence of counsel the defendant must establish actual incompetence as reflected by the representation and substantial prejudice resulting therefrom." (*People v. Witherspoon*, 55 Ill. 2d 18, 21, 302 N.E.2d 3, 4-5.) In *People v. Morris*, 3 Ill. 2d 437, 449, 121 N.E.2d 810, 817, the Supreme Court indicated that the actual prejudice would have to be such that without it "the outcome would probably be different." Later, in *People v. Stepheny*, 46 Ill. 2d 153,

158, 263 N.E.2d 83, 86, the Supreme Court indicated that a defendant was deprived of effective assistance of counsel if that counsel negligently failed to produce testimony the cumulative effect of which "could well have produced a different result."

The prosecution contends that we should consider the prejudice to defendant of the admission of this evidence in the context that the proof of guilt was overwhelming. We disagree. The evidence against defendant centered upon the testimony of the accomplice Collins who testified under hope and expectation of leniency and who bore a grudge against defendant. Although he did testify that defendant was present when mention was made of having intercourse with one of the girls, that defendant was "supposed" to be getting the girl out of the car, and that he saw defendant come through the bushes and into the park, Collins did not say that he ever saw defendant touch either girl. The only corroboration of defendant's participation in the crime was the testimony of the four boys in the park. Defendant had some corroboration of his alibi.

■■ Although the evidence appears to have been sufficient to support a verdict of guilty, had defense counsel taken proper action with regard to the introduction of the letter, it "could well have produced a different result for defendant." The petition sufficiently sets forth a violation of defendant's constitutional right to effective assistance of counsel at trial.

The petition also alleges:

> "Prior to the commencement of the second trial Petitioner was challenged by said Assistant State's Attorney Cramer through Public Defender John Unger, who brought the message, to 'take a lie detector test, if you claim you're innocent', and other statements indicating that if Petitioner should pass such examination he either would be considered by the Assistant State's Attorney to be an innocent man and released, or at least, the Jury would know that he had passed such test."

The petition then states that the test was taken by a competent licensed polygraph examiner and that the results indicated that defendant was telling the truth when he said that he was not present at the time and did not know who, other than Collins, had committed the offense. He alleges that his rights were violated when the prosecution objected to the admission into evidence of the results of the test. The Code of Criminal Procedure requires that the petition "clearly set forth" the respects in which the petitioner's rights were violated. (Ill. Rev. Stat. 1973, ch. 38, par. 122—2.) This allegation is insufficient to set forth that the State made a promise as to the use of the test results and then violated the promise.

No authority is cited for the proposition that the breach of a stipulation by the State generally violates a defendant's constitutional rights, and we have been unable to find such authority. In *Santobello v. New York*, 404

U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495, and its progeny, breaches of promises in reliance upon which accused persons have entered pleas of guilty have been held to deprive them of their constitutional right to due process. Here there is no showing of detriment to defendant by taking the test similar to the detriment to an accused who pleads guilty. The trial court was correct in rejecting this contention.

We find no other allegation of the petition sufficient to set forth a violation of defendant's constitutional rights at trial.

On appeal counsel for defendant raised only the questions of racial bias in the selection of jury, the giving of certain instructions and the severity of the sentence. The People contend that the other issues raised in the post-conviction petition could have been raised on appeal and are, therefore, waived. In *People v. Frank*, 48 Ill. 2d 500, 272 N.E.2d 25, the Supreme Court made the following comprehensive statement of the limitations of the waiver doctrine:

> "At the outset, we shall consider the application of *res judicata* and waiver, and the closely related issue of the competency of counsel on the direct appeal. We have earlier suggested that the doctrine of waiver ought not to bar issues from consideration under the Post-Conviction Hearing Act where the alleged waiver stems from incompetency of appointed counsel on appeal (see *People v. Weaver*, 45 Ill. 2d 136; *People v. McCracken*, 43 Ill. 2d 153; *People v. Doherty*, 36 Ill. 2d 286), or denial of counsel on appeal (*People v. Keagle*, 37 Ill. 2d 96). This notion comports with related holdings that waiver will not apply where it would act as a denial of due process (*People v. Thompson*, 36 Ill. 2d 332; *People v. Burson*, 11 Ill. 2d 360), or of fundamental fairness (*People v. Hamby*, 32 Ill. 2d 291) where appointed counsel on appeal thwarted the defendant's vigorous and manifest efforts (see *People v. Kamsler*, 39 Ill. 2d 73; *People v. Agnello*, 35 Ill. 2d 611; *People v. Ashley*, 34 Ill. 2d 402) to raise additional issues. In view of the need to protect 'the right to appeal with the aid of competent counsel, and upon appraisal of the spirit and ultimate purpose of the Post-Conviction Hearing Act, we conclude that the Act provides a proper vehicle for review of those issues as to which review by direct appeal has been unconstitutionally denied by deprivation of the right to appeal, the right to competent counsel on appeal, or the concept of fundamental fairness." 48 Ill. 2d 503-04, 272 N.E.2d 27.

The petition sets forth that the public defender who represented defendant at trial was appointed to represent him on appeal but subsequently withdrew. Another public defender was appointed who prepared the abstract and briefs. The parents of defendant then hired a lawyer from Springfield to represent defendant and the public defender

withdrew. The Springfield lawyer is alleged to have taken a fee from the parents, done no work, and left town with the fee. A lawyer from Chicago was then hired by the parents and he argued the case on appeal. The petition further states that defendant was not consulted as to the hiring of the latter two attorneys and did not consent to their representation. He further alleged that none of the attorneys on appeal ever contacted him in any way.

■■ Failure to raise an issue on appeal is incompetency of counsel only when "his appraisal of the merits is patently wrong." (*People v. Rooney*, 16 Ill. App. 3d 901, 904; 307 N.E.2d 216, 218.) Since trial counsel failed to make necessary objections in the trial court concerning the introduction of the letter, there were no rulings of the trial court to cite as error on appeal. We do not deem the failure of appellate counsel to raise the question of the competency of trial counsel as "patently wrong." We do, however, consider this failure with the other circumstances in the case.

■■ In *People v. Hamby*, 32 Ill. 2d 291, 205 N.E.2d 456, a convicted defendant who had been denied leave to proceed pro se on appeal and raise points his counsel did not wish to raise was held to have not waived these points as to his subsequent post-conviction petition. The instant petition sets forth an analogous situation. Defendant claims to have early but unsuccessfully asked his attorney to seek a severance. If this is true it would appear that, although he did not understand the right of confrontation and the hearsay rule, he sensed that he could not be protected in a joint trial. The errors of trial counsel indicated in the petition arose out of the handling of the offer of Heard's letter in a trial where Heard and defendant were both charged. It would appear that in attempting to protect Heard, counsel forgot to protect defendant Martin. If the allegation that none of counsel on direct appeal ever contacted defendant is true, then he had no opportunity to convey to them his concern about his deprivation of rights at trial. The totality of circumstances alleged set forth a situation where under the "fundamental fairness" doctrine, defendant should not be held to have waived his claim of incompetency of counsel at trial.

Accordingly, the order of the trial court dismissing the petition is reversed. The case is remanded to the Circuit Court of Vermilion County to hold an evidentiary hearing. The allegations of the petition as to the record at trial, if found to be accurate, are sufficient to compel a finding that the defendant's right to effective assistance of counsel was violated at the trial level. If the determination is made that such a violation occurred, it must then be determined whether the allegations of the petition negating waiver of that issue are sufficiently proved.

Reversed and remanded with directions.

TRAPP, P. J., and SIMKINS, J., concur.